2001 UT App 34

**Jeroldene BAILEY, Petitioner and Appellee,**

v.

**Randee BAYLES, Respondent and Appellant.**

**No. 990765–CA.**

Court of Appeals of Utah.

Feb. 1, 2001.

---

Matthew Hilton, Springville, for Appellant.

Rosalie Reilly, Monticello, for Appellee.

Before Judges BENCH, DAVIS, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Respondent/Appellant Randee Bayles appeals the trial court's decision granting Petitioner/Appellee Jeroldene Bailey's petition for a permanent protective order. We affirm.

## BACKGROUND

¶ 2 In January of 1997, Bayles and Bailey, after twenty-seven years of marriage, separated and ultimately divorced. Bailey subsequently filed a Verified Petition for a Protective Order against Bayles. In the petition, Bailey alleged that following their separation Bayles had initiated a pattern of behavior intended to intimidate and cause her fear. Bailey's petition listed several specific incidents, which covered nearly four pages, and included repeated examples of unwanted and unnecessary contact initiated by Bayles.[1] Bailey characterized Bayles's behavior as stalking, however, at no point did she file a criminal Stalking complaint against Bayles.[2]

¶ 3 In addition, Bailey's petition asserted that throughout the parties' marriage Bayles had physically, emotionally, and mentally abused her. In support of this claim, Bailey provided specific examples of abuse, including allegations that Bayles had at least twice threatened to kill her.

¶ 4 The trial court, after conducting several hearings concerning Bailey's petition, concluded by a preponderance of the evidence

---

1. The petition listed twenty incidents involving Bayles. Also listed were nearly forty phone calls from unlisted numbers where the caller either hung-up prior to or immediately after either Bailey or her current husband answered the phone. Bailey also submitted an affidavit to the court roughly outlining one witness's testimony concerning repeated complaints filed against Bailey and her husband by Bayles at their place of employment. While the trial court did not find each of these incidents occurred by a preponderance of the evidence, Mr. Bayles was clearly on notice of the nature of the petition and the underlying allegations supporting it.

2. For clarity, we refer to criminal Stalking using a capital "S" and behavior referred to as stalking with a small "s."

that Bayles had "been stalking [Bailey] by intentionally or knowingly engaging in a course of conduct directed at [Bailey] that would cause a reasonable person to suffer emotional distress herself."

¶ 5 The trial court issued the following specific factual findings in support of its grant of the petition:

1. The respondent maintained a visual or physical proximity to defendant on two or more occasions as follows:

   A. On June 17, 1998, the respondent drove slowly by the petitioner as she was getting out of her car to go into the house to have lunch.

   B. On May 18, 1998, the petitioner and her husband went to the Old Timers café for lunch. The respondent circled around the restaurant twice and, as the petitioner and her husband left the café, the respondent went to Parley Redds, made a U-turn, and followed petitioner and her husband to their employment at the School District office.

   C. On March 31, 1998, the respondent followed the petitioner slowly in his truck as she walked home for lunch.

   D. On March 31, 1998, the respondent drove by petitioner's home 6 times. When she and her husband were leaving in the car to go for a ride, the respondent drove by, waving and honking.

   E. On June 10, 1998, Jeff Bailey, husband of the petitioner, was driving from Blanding to Monticello when the respondent pulled up close behind Mr. Bailey, then pulled alongside him, causing Mr. Bailey to slow down. Respondent drove alongside Mr. Bailey's vehicle at a speed of about 10 mph and then pulled in front of Mr. Bailey and came to a complete stop in the road. Mr. Bailey then pulled out and went around the respondent.

2. The respondent knew or should have known that the above conduct would cause emotional distress to the petitioner or to her husband, Jeff Bailey, because of the stormy marriage of 27 years during which the respondent called the petitioner foul and obscene names on many occasions, physically abused her by slapping her, and threatened her with bodily harm by holding a pistol to her neck in 1975, and by telling her in [sic] the opining [sic] day of deer season in the 1990' [sic] that he could kill her anytime he wanted.

¶ 6 The trial court, after granting Bailey's petition, used the standard protective order form, and restricted Bayles from the following: (1) attempting, threatening, or committing any further domestic abuse against Bailey; (2) attempting, threatening, or committing further violence against Bailey's husband; (3) contacting, harassing, telephoning or otherwise communicating with Bailey; (4) trespassing at Bailey's place of residence; and (5) interfering with or appearing at Bailey's workplace.

¶ 7 Bayles appeals from the trial court's grant of a protective order.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Bayles argues that, because the trial court relied on Utah's criminal Stalking statute, see Utah Code Ann. § 76-5-106.5 (1999), the trial court's findings do not satisfy the requisite burden of proof to prove that Bayles Stalked Bailey, and therefore, the order should be reversed and Bailey's petition dismissed.

¶ 9 However, while we agree that the trial court concluded Bayles had been Stalking Bailey, pursuant to section 76-5-106.5, we need not address the sufficiency of this conclusion. "It is well-established that [we] may affirm a 'judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record,' even though that ground or theory was not identified by the lower court as the basis of its ruling." *Orton v. Carter,* 970 P.2d 1254, 1260 (Utah 1998) (quoting *Limb v. Federated Milk Producers Ass'n,* 23 Utah 2d 222, 461 P.2d 290, 293 n. 2 (1969)); *see also Bagshaw*

*v. Bagshaw,* 788 P.2d 1057, 1060 (Utah Ct. App.1990).[3]

## ANALYSIS

¶ 10 Bayles argues that the trial court's factual findings do not support its conclusion that he had been Stalking Bailey following the parties separation and divorce. However, we need not address this argument. The issue now before this court is whether the trial court's decision to grant Bailey's petition for a protective order is supported by either the trial court's specific findings or the undisputed evidence. *See Bagshaw,* 788 P.2d at 1060.

¶ 11 Utah Code Ann. § 30–6–2(1) (1999) sets forth the requirements that a party must meet to obtain a protective order. In pertinent part, section 30–6–2(1) states:

> [a]ny cohabitant ... who has been subjected to abuse or domestic violence, or to whom there is a substantial likelihood of immediate danger of abuse or domestic violence, may seek an ex parte protective order or a protective order in accordance with this chapter, whether or not that person has left the residence or the premises in an effort to avoid further abuse.

*Id.*[4] Further, in *Strollo v. Strollo,* 828 P.2d 532 (Utah Ct.App.1992) we explained the re-

quirements of section 30–6–2(1), concluding that

> [s]ection 30–6–2 clearly indicates that "any person who has been subjected to abuse" may seek a protective order. Further, because "abuse" is defined as "intentionally placing another in fear of imminent physical harm," if past abuse is coupled with a present threat of future abuse, a person may seek a protective order.

*Strollo,* 828 P.2d at 534 (quoting *Boniek v. Boniek,* 443 N.W.2d 196, 198 (Minn.Ct.App. 1989)).

■ ¶ 12 Therefore, to obtain a protective order, Bailey was required only to demonstrate, (1) she is or was a cohabitant of the respondent, as defined by Utah Code Ann. § 30–6–1(1) (1998)[5]; (2) she had suffered physical abuse or domestic violence, as defined by Utah Code Ann. § 77–36–1 (1999); and (3) she had an imminent fear of physical harm or, put another way, " 'a present fear of future abuse.' " *See Strollo,* 828 P.2d at 534 (citation omitted).

■ ¶ 13 In March and April of 1999, the trial court held evidentiary hearings on Bailey's petition for a protective order, after which the trial court concluded that, over the course of their twenty-seven year marriage, Bayles had pursued a pattern of physical violence that included pushing, slapping, and

---

3. This is a long established practice of appellate courts both in and out of Utah. *See, e.g.,* 5 C.J.S. Appeal and Error § 714 ("the appellate court will affirm the judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent from the record"); *see also Rasmussen v. Davis,* 1 Utah 2d 96, 262 P.2d 488, 489 (1953)(holding that it is the accepted policy of the court to affirm a trial court's ruling on other grounds "if the conclusion reached, though based on incorrect reasons, is in fact correct for some other reason" (footnote omitted)). In the instant case, the trial court concluded that Bayles had engaged in Stalking Bailey. *See* Utah Code Ann. § 76–5–106.5 (1999). However, in our view the trial court also characterized the *totality* of Bayles's actions as non-criminal stalking in an attempt to describe Bayles's conduct towards Bailey. Moreover, it is clear from the hearing record and from the trial court decision that Bailey initiated the action solely for the purpose of obtaining a protective order against her ex-spouse. Therefore, we conclude that it is appropriate for this court to review the trial court's decision in light of Bai-

ley's initial petition for protective order, rather than under the criminal Stalking statute.

4. In response to a growing concern, nationwide as well as in Utah, surrounding the recognition of domestic violence as a clear community problem, the Utah Legislature adopted a statewide response in the Cohabitant Abuse Act. *See* Utah Code Ann. §§ 30–6–1 to 14 (1999). Whether by design or accident, a significant number of victims had previously found that orders of protection were not available to them. The purpose of the Cohabitant Abuse Act was to create a timely and simplified process whereby some level of protection and safety could be afforded to victims who had previously been outside the umbrella of orders available to persons involved in criminal prosecutions. These orders would require that the party subject to the order of protection leave the victim alone and provide for some measurable and enforceable safeguards, as determined by the court.

5. Because Bailey does not dispute that Bayles meets this requirement, we do not examine it.

punching Bailey. The trial court also found that Bayles had both verbally and emotionally abused Bailey during their marriage—abuse that included Bayles putting a gun to Bailey's neck and telling her he could kill her at any time. Accordingly, the trial court correctly concluded that Bayles had subjected Bailey to physical abuse and domestic violence.

¶ 14 The trial court also found that after the separation, (1) Bayles had repeatedly followed Bailey in his car, both while she was on foot and in her vehicle; and (2) Bayles had also repeatedly followed Bailey's current husband, conduct that included a potentially volatile incident on an isolated and deserted stretch of highway. Further, the trial court found that Bayles had twice threatened Bailey's life. Finally, in both her petition and during her testimony, Bailey clearly indicated to the trial court that she experienced a constant fear of Bayles, a fear that was aggravated with every incident. Based on Bailey's testimony, the trial court correctly concluded in its memorandum decision that Bailey's emotional distress was reasonable.

■ ¶ 15 From the record before us, we conclude that the evidence supports the trial court's finding that Bayles abused Bailey during their marriage. We further conclude Bailey presented sufficient evidence to support the trial court's determination that, following their separation, Bayles intentionally created in Bailey an imminent fear of physical harm. Finally, we conclude that Bayles's conduct—repeatedly following Bailey, following Bailey's husband, repeatedly calling Bailey's home and workplace, coupled with the evidence of past abuse—was sufficient for the trial court to conclude that Bailey's fear

was both reasonable and real. *See Strollo*, 828 P.2d at 535.

¶ 16 Therefore, we conclude that the trial court did not err in granting Bailey's petition and issuing the requested protective order.

¶ 17 I CONCUR: RUSSELL W. BENCH, Judge.

DAVIS, Judge (dissenting):

¶ 18 Today we decide a case that was not presented to the trial court, not argued to the trial court, not decided by the trial court, and not briefed or argued to this court.[1] The majority affirms the judgment of the trial court based on this court's power to "affirm on any ground." The genesis of the "affirm on any ground" approach in Utah is unclear,[2] and current statements of the approach are broad enough to encompass a virtual retrial of the case by the appellate court.[3] However, it is well established that parties define the parameters of their case and that, except on legal issues, it is improper for the appellate court to substitute its judgment for that of the trial court. *See Willey v. Willey*, 951 P.2d 226, 230 (Utah 1997) ("It is inappropriate in most instances for an appellate court to disregard the trial court's findings of fact and conclusions of law and to assume the task of weighing evidence and making its own findings of fact."). In my view, application of the "affirm on any ground" approach by the majority in this case amounts to a determination that the record establishes that Jeroldene Bailey is entitled to relief as a matter of law on whatever theory the appellate court feels comfortable with, and nothing the parties may have done or omitted to do and nothing the trial court may have found would affect the outcome. Otherwise, the appellate court would be depriving the parties of one of the most fundamental tenets of

1. Bailey requested a protective order based on her claim that Bayles was stalking her; therefore, the evidence presented at the hearing, the findings of the trial court, the conclusions of the trial court and the briefs on appeal all focused on Utah Code Ann. § 76–5–106.5 (1999) (the statute defining the crime of stalking).

2. *See Huntsman v. Huntsman*, 56 Utah 609, 192 P. 368, 374 (1920) ("While this court is not bound by the reasons given by the trial court for its conclusions, but may affirm or modify a judg-

ment upon any legal ground appearing in the record, still it is not bound to do so, and ought not to in an equitable proceeding if it might result in injustice to the appellant."); *see also Limb v. Federated Milk Producers Ass'n*, 23 Utah 2d 222, 461 P.2d 290, 293 n. 2 (1969) ("The law is well settled that a trial court should be affirmed if on the record made it can be.").

3. *See Goodsel v. Dep't. of Bus. Reg.*, 523 P.2d 1230, 1232 (Utah 1974).

due process-notice and an opportunity to be heard. *See Dairy Prod. Servs. v. City of Wellsville,* 2000 UT 81,¶ 49, 13 P.3d 581 ("The minimum requirements [of due process] are adequate notice and an opportunity to be heard in a meaningful manner.").[4]

¶ 19 Here, the trial court decided the case that was presented and the majority's "affirm on any ground" approach is inappropriate. Specifically, the majority's affirmance of the trial court relies on evidence from the record, admitted in support of Bailey's claim, and applies it to a completely different claim. As a result, this court is reshaping the relevance and importance of evidence that was presented against Bayles in the earlier proceeding. Such an approach is improper in the present case because, had Bayles been aware that certain testimony was or would become determinative of the different case decided by the court of appeals, his trial strategy and/or his arguments on appeal may have changed dramatically. Similarly, had the trial court heard the case now decided by the court of appeals and the evidence relied upon by the court of appeals in that context, its findings, conclusions, and rulings may have been totally different.[5] Therefore, it would "result in injustice to the appellant" for this court to focus on what amounts to a different case in an effort to affirm the erroneous ruling of the trial court. *Huntsman,* 192 P. at 374. In the case that was tried and appealed, I would hold that the trial court's

conclusion that Bayles was stalking Bailey was in error for the following reasons.

¶ 20 On July 7, 1998, Bailey, Bayles's ex-wife, filed a verified petition for a protective order against Bayles, and the court granted an ex parte protective order on the same day. The ex parte order was issued pursuant to the Cohabitant Abuse Act which allows the court to issue an ex parte protective order if it appears from the petition that domestic violence or abuse has occurred. *See* Utah Code Ann. § 30-6-4.2(1) (1999).

¶ 21 In order to determine whether the ex parte order should continue as a permanent order, the court held an evidentiary hearing on the petition. Throughout this hearing, the parties were represented by counsel, and Bailey urged the court to focus on the fear of bodily injury prong of each of the conjunctive elements of the stalking statute. *See* Utah Code Ann. §§ 76-5-106.5 (1999) (defining the crime of stalking),[6] & 77-36-1(2)(i) (1999) (stating that stalking is an act of domestic violence). The court was also provided with the citation to and the language from *Salt Lake City v. Lopez,* 935 P.2d 1259, 1264 (Utah Ct.App.1997) (interpreting the emotional distress prong of section 76-5-106.5), and the court acknowledged the provisions of that case.

¶ 22 Presumably rejecting Bailey's urging of the fear of bodily injury prong within the elements of section 7-5-106.5, the court issued a memorandum decision that con-

4. I agree with the majority that the Legislature enacted the Cohabitant Abuse Act in an attempt to deal with the serious problem of domestic violence, and I acknowledge the majority's desire to remedy the same. However, the important purposes of the Cohabitant Abuse Act do not trump due process of law. *See* U.S. Const. amend. XIV, § 1; Utah Const. art. I, § 7.

5. I am also troubled by the majority's reliance on instances of abuse that allegedly occurred anywhere from four to twenty-five years before the petition for a protective order was filed. While the trial court relied on that evidence in support of its conclusion relative to Bayles knowledge or constructive knowledge, the majority, without any opportunity for the parties or the trial court to address the issue, uses the evidence as direct evidence of a substantively different type of domestic violence.

6. A person is guilty of stalking who:

(a) intentionally or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person:
  (i) to fear bodily injury to himself or a member of his immediate family; or
  (ii) to suffer emotional distress to himself or a member of his immediate family;
(b) has knowledge or should have knowledge that the specific person:
  (i) will be placed in reasonable fear of bodily injury to himself or a member of his immediate family; or
  (ii) will suffer emotional distress or a member of his immediate family will suffer emotional distress; and
(c) whose conduct:
  (i) induces fear in the specific person of bodily injury to himself or a member of his immediate family; or
  (ii) causes emotional distress in the specific person or a member of his immediate family.
Utah Code Ann. § 76-5-106.5 (1999).

tained findings of fact and conclusions of law focusing on the emotional distress prong of the first two of the required elements of the stalking statute, rather than the fear of bodily injury prong of these elements. The memorandum decision contained no findings or conclusions addressing the third required element-whether Bayles's conduct actually caused Bailey to suffer emotional distress or fear of bodily injury-but the court nonetheless ultimately concluded that Bayles had engaged in domestic violence because he had been stalking his ex-wife. Specifically, the court concluded: (1) "[R]espondent has been stalking petitioner by intentionally or knowingly engaging in a course of conduct directed at petitioner that would cause a reasonable person to suffer emotional distress herself or to a member of her family." [7] (2) "The respondent knew or should have known that the above conduct would cause emotional distress to the petitioner...." [8]

¶ 23 Neither party objected to the court's findings and conclusions. Neither party submitted proposed findings and conclusions. Neither party moved the court to amend its findings or make additional findings pursuant to Rule 52(b) of the Utah Rules of Civil Procedure. Neither party requested a new trial or amendment of judgment pursuant to Rule 59 of the Utah Rules of Civil Procedure, and plaintiff neither cross appealed nor argued affirmance on alternate grounds.

7. The court based this conclusion on the following findings:

1. The respondent maintained a visual or physical proximity to [petitioner] on two or more occasions as follows.
   A. On June 17, 1998, the respondent drove slowly by the petitioner as she was getting out of her car to go into the house to have lunch.
   B. On May 18, 1998, the petitioner and her husband went to the Old Timers café for lunch. The respondent circled around the restaurant twice and, as the petitioner and her husband left the café, the respondent went to Parley Redds, made a U-turn and followed petitioner and her husband to their employment at the School District office.
   C. On March 31, 1998, the respondent followed the petitioner slowly in his truck as she walked home for lunch.
   D. On March 13, 1998, the respondent drove by petitioner's' [sic] 6 times. When she and her husband were leaving in the car to go

¶ 24 Bayles claims that the trial court erred in its application of the stalking statute to the facts found in this case. Legal determinations regarding the trial court's application of the law to the set of facts are reviewed with more deference than the trial court's interpretation of the law. *See State v. Farrow,* 919 P.2d 50, 53 (Utah Ct.App. 1996); *accord State v. Pena,* 869 P.2d 932, 939–40 (Utah 1994). Bayles also claims that the trial court erred by not making findings on all the elements of the stalking statute. "In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon...." Utah R.Civ.P. 52(a).

> "Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment.' The findings of fact must show that the court's judgment or decree 'follows logically from, and is supported by, the evidence.' The findings 'should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.'"

*Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.,* 909 P.2d 225, 231 (Utah 1995) (citations omitted).

for a ride, the respondent drove by, waiving and honking.
   E. On June 10, 1998, Jeff Bailey, husband of the petitioner, was driving from Monticello when the respondent pulled up close behind Mr. Bailey, then pulled alongside him, causing Mr. Bailey to slow down. Respondent drove alongside Mr. Bailey's vehicle at a speed of about 10 mph and then pulled in front of Mr. Bailey and came to a complete stop in the road. Mr. Bailey then pulled out and went around the respondent.

8. In support of this conclusion, the court found that there was
   [a] stormy marriage of 27 years during which the respondent called the petitioner foul and obscene names on many occasions, physically abused her by slapping her, and threatened her with bodily harm by holding a pistol to her neck in 1975, and by telling her in the opining [sic] day of deer season in the 1990' [sic] that he could kill her any time he wanted.

¶ 25 Although the three conjunctive elements of the crime of stalking may be based upon a showing of emotional distress or reasonable fear of bodily injury, the court based its conclusions on the emotional distress prong. This court has stated that "[t]he emotional distress [prong] is not satisfied by causing mere anxiety or annoyance." *Salt Lake City v. Lopez*, 935 P.2d 1259, 1264 (Utah Ct.App.1997) (interpreting the element of emotional distress contained in the stalking statute). Furthermore, *Lopez* requires that "[e]motional distress results from conduct that is 'outrageous and intolerable in that it offends the generally accepted standards of decency and morality.'" *Id.* (citations omitted).

¶ 26 Thus, regarding the trial court's ruling on the first element of the stalking statute in light of our ruling in *Lopez,* the trial court erred in concluding that Bayles engaged in a course of conduct that would cause a reasonable person to suffer emotional distress.[9] Here, the court's findings in support of its conclusion that Bayles "intentionally or knowingly engage[d] in a course of conduct directed at [Bailey] that would cause a reasonable person to suffer emotional distress[,]" do not evidence outrageous and intolerable conduct that offends generally accepted standards of decency and morality. Bayles's actions of following Bailey and driving by her house would have been annoying and may have induced anxiety; however, five such instances spread out over a four month period do not support the conclusion that Bayles engaged in a course of conduct that would cause a reasonable person to suffer anything *more* than mere anxiety or annoyance. Because of our ruling in *Lopez,* which was well argued before the trial court in this case, I would hold that the court erred in its application of the emotional distress prong of the stalking statute to the findings in this case.

¶ 27 In reviewing the trial court's application of the second element of the stalking

statute to the facts in this case, the findings support the trial court's conclusion that Bayles knew or should have known that his conduct would cause emotional distress to Bailey. However, the court did not specifically find, in support of this element, that plaintiff suffered from more than anxiety and annoyance, perhaps because plaintiff put on no objective evidence thereof. *Cf. Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 973–75 (Utah 1993) (holding that emotional distress requires a showing of either physical symptoms or mental illness); *White v. Blackburn,* 787 P.2d 1315, 1317–18 (Utah Ct.App. 1990) (finding that emotional distress requires extreme outrageous behavior).

¶ 28 As for the third element of the stalking statute, the court did not make any findings or conclusions regarding whether Bayles's conduct actually caused emotional distress in Bailey or a member of her family. Consequently, the court committed reversible error when it failed to make findings or conclusions regarding this material issue.[10] *See Butler,* 909 P.2d at 231. Furthermore, after a careful review of the record, it is not clear that the facts support only a determination that Bayles's conduct had actually caused Bailey to suffer emotional distress. *See id.*

¶ 29 Notwithstanding the apparent insufficiency of the findings in light of *Lopez,* a case with which the parties and the trial court were familiar, no one objected to the findings and conclusions, no one provided the trial court with proposed findings and conclusions, no one moved the court to amend its findings or make additional findings pursuant to Rule 52(b) of the Utah Rules of Civil Procedure, no one requested a new trial or amendment of judgment pursuant to Rule 59 of the Utah Rules of Civil Procedure and plaintiff neither cross appealed nor argued affirmance on alternate grounds. Under the facts and circumstances of this case, I believe to "affirm on any ground" implicates due process and is inappropriate. Consequently,

---

9. This "reasonable person" standard "prevents the finder of fact from establishing its own standard and establishes the requisite objective standard [to provide fair notice of the prohibited conduct]." *State v. Ruesch,* 214 Wis.2d 548, 571

N.W.2d 898, 905 (1997). Bailey introduced virtually no objective evidence of emotional distress.

10. Emotional distress is a material issue because it is one of the elements of the crime of stalking.

 

I would reverse the trial court's order granting Bailey a protective order against Bayles.