2002 UT 58

**Jeroldene BAILEY, Plaintiff and Respondent,**

v.

**Randee BAYLES, Defendant and Petitioner.**

No. 20010304.

Supreme Court of Utah.

June 25, 2002.

⚷316

Rosalie Reilly, Monticello, for plaintiff.

Matthew Hilton, Springville, for defendant.

On Certiorari to the Utah Court of Appeals

RUSSON, Justice:

¶ 1 On writ of certiorari, defendant Randee Bayles ("Bayles") seeks reversal of the Utah Court of Appeals' affirmation of the issuance of a protective order against him on grounds and facts different than and supplemental to those found and relied upon by the trial court and annulment of the protective order.

## BACKGROUND AND PROCEDURAL HISTORY

¶ 2 Bayles was married to Jeroldene Bailey ("Bailey") for twenty-seven years. In January 1997, they separated and divorced. On July 7, 1998, Bailey filed a verified petition for a protective order and sought an ex parte protective order against Bayles. Bailey alleged that Bayles, for a period of a year and a half since their separation, had "been engaged in stalking" her. Bailey brought the request for an ex parte protective order and the verified petition on her own behalf but also named Jeff Bailey, her current husband, and Sharo Burtenshaw, one of Bailey's three

daughters from her marriage with Bayles, as persons within the scope of the protective order. The trial court issued an ex parte protective order based on the verified petition on the same day the petition was filed.

¶ 3 Approximately six months later, Bayles moved the trial court to dismiss or deny the ex parte protective order on the basis that it had expired, that it was overly broad in its inclusion of Jeff Bailey and Sharo Burtenshaw, and that the facts did not demonstrate that a protective order was warranted. Bayles also moved the trial court in the alternative to strike Jeff Bailey and Sharo Burtenshaw, arguing that they did not come within the statutory provisions of the Cohabitant Abuse Act, Utah Code Ann. §§ 30–6–1 to –14 (1999), the statute under which the ex parte order was issued and the verified petition was filed. In response to Bayles' motions, Bailey moved the trial court for a final hearing on her verified petition for a protective order and asked that the ex parte protective order be made permanent. Both parties submitted memoranda of law in connection with these motions and briefed the issues of law under the Cohabitant Abuse Act.

## I.   TRIAL COURT DISPOSITION

¶ 4 The trial court denied Bayles' motions and found that both Jeff Bailey and Sharo Burtenshaw fell within the Cohabitant Abuse Act's provisions as designated family members. At the same time, the trial court

granted Bailey's motion for a final hearing and set a date for a bench trial.

¶ 5 The trial court heard testimony and accepted evidence over the course of three days. Both Bayles and Bailey were present and represented by counsel during the bench trial. In August 1999, the trial court issued a memorandum decision and ordered that the protective order against Bayles be made permanent. In its memorandum decision, the trial court concluded that Bayles had committed an act of domestic violence against Bailey by stalking her. The trial court explicitly relied on two statutory provisions in reaching its conclusion. First, the trial court looked to Utah Code Ann. § 76–5–106.5(2) (1999), the Utah criminal stalking statute, to determine that Bayles had been stalking Bailey. Having determined that Bayles' conduct met the requirements of that statute and that Bayles therefore had stalked Bailey, the trial court then relied upon Utah Code Ann. § 77–36–1(2)(i) (1999), the Cohabitant Abuse Procedures Act, to conclude that Bayles had committed an act of domestic violence against Bailey by stalking her. The trial court did not explicitly rely on the provisions of the Cohabitant Abuse Act in its memorandum decision. The trial court supported its conclusions of law and its decision that the ex parte protective order should be made permanent with somewhat limited yet specific findings of fact.[1] Bayles appealed to the Utah Court of Appeals.

---

1.  The trial court's findings of fact are as follows:
    1. The respondent maintained a visual or physical proximity to defendant [sic] on two or more occasions as follows:
        A.  On June 17, 1998, the respondent drove slowly by the petitioner as she was getting out of her car to go into the house to have lunch.
        B.  On May 18, 1998, the petitioner and her husband went to the Old Timers café for lunch. The respondent circled around the restaurant twice and, as the petitioner and her husband left the café, the respondent went to Parley Redds, made a U-turn, and followed petitioner and her husband to their employment at the School District office.
        C.  On March 31, 1998, the respondent followed the petitioner slowly in his truck as she walked home for lunch.
        D.  On March 13, 1998, the respondent drove by petitioner's home 6 times. When she and her husband were leaving in the car to go

for a ride, the respondent drove by, waving and honking.
        E.  On June 10, 1998, Jeff Bailey, husband of the petitioner, was driving from Blanding to Monticello when the respondent pulled up close behind Mr. Bailey, then pulled alongside him, causing Mr. Bailey to slow down. Respondent drove alongside Mr. Bailey's vehicle at a speed of about 10 mph and then pulled in front of Mr. Bailey and came to a complete stop in the road. Mr. Bailey then pulled out and went around the respondent.
    2. The respondent knew or should have known that the above conduct would cause emotional distress to the petitioner or to her husband, Jeff Bailey, because of the stormy marriage of 27 years during which the respondent called the petitioner foul and obscene names on many occasions, physically abused her by slapping her, and threatened her with bodily harm by holding a pistol to her neck in 1975, and by telling her in the opening day of

## II.  COURT OF APPEALS DISPOSITION

¶ 6 On appeal to the Utah Court of Appeals, Bayles challenged the sufficiency of the trial court's findings of fact in support of its conclusion that Bayles had committed an act of domestic violence based on stalking. Bayles argued that the trial court had grounded its conclusion that he had stalked Bailey on the provision of the criminal stalking statute, Utah Code Ann. § 76–5–106.5(2), and that Bailey had failed to meet her burden of proof under that statute.  In affirming the trial court's grant of a permanent protective order, the court of appeals, while agreeing with Bayles that the trial court had relied on the criminal stalking statute for its conclusion, decided that it did not need to reach the sufficiency of the evidence as to the trial court's conclusion on this ground.  *Bailey v. Bayles,* 2001 UT App 34, ¶ 9, 18 P.3d 1129. Instead, the court of appeals decided to affirm the trial court's decision on alternate grounds under Utah Code Ann. § 30–6–2(1) (1999).  *Bailey,* 2001 UT App 34 at ¶¶ 10–11, 18 P.3d 1129.  Using this alternate ground, the court of appeals determined that the trial court's ultimate conclusion that a permanent protective order should issue was supported by the specific findings of the trial court and the undisputed evidence.  *Id.* at ¶ 10.

## III.  WRIT OF CERTIORARI

¶ 7 Bayles filed a petition for a writ of certiorari with this court, seeking review of the decision of the court of appeals.  We granted the petition.  In this appeal, Bayles raises two arguments.  First, Bayles argues that the court of appeals deprived him of his rights of due process of law under the Fourteenth Amendment to the United States Constitution and article 1, section 7 of the Utah Constitution by denying him timely and adequate notice and opportunity to be heard when it affirmed the trial court's decision on alternate legal grounds and found and relied upon additional facts not found by the trial court.  Second, Bayles similarly argues that the court of appeals in the same way and for the same reasons deprived him of his right of due course of law under article 1, section 11

deer season in the 1990' [sic] that he could kill

of the Utah Constitution.  Bayles seeks to have the permanent protective order vacated.

## STANDARD OF REVIEW

■ ¶ 8 "When exercising our certiorari jurisdiction, 'we review the decision of the court of appeals, not of the trial court.'" *Macris & Assocs., Inc. v. Neways, Inc.,* 2000 UT 93, ¶ 17, 16 P.3d 1214 (quoting *Carrier v. Pro–Tech Restoration,* 944 P.2d 346, 350 (Utah 1997)).  We accord no particular deference to the court of appeals' ruling; we review for legal correctness.  *Bear River Mut. Ins. Co. v. Wall,* 1999 UT 33, ¶ 4, 978 P.2d 460.

## ANALYSIS

### I.  AFFIRM ON ANY GROUND

¶ 9 We first must address whether the court of appeals erred in affirming on alternate grounds and then whether the court of appeals denied Bayles due process of law by resorting to the "affirm on any ground" rule.  Bayles contends that he was deprived of his fundamental right to timely and adequate notice and opportunity to be heard in a meaningful way when the court of appeals chose to affirm on alternate grounds the trial court's issuance of a permanent protective order against him.  Bayles argues that he was unfairly surprised by and unable to adequately respond to the novel legal theory relied upon by the court of appeals when it affirmed on alternate grounds.

■ ¶ 10 It is well settled that an appellate court may affirm the judgment appealed from

"if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court."

her anytime he wanted.

**1162**

*Dipoma v. McPhie,* 2001 UT 61, ¶ 18, 29 P.3d 1225 (quoting *Limb v. Federated Milk Producers Ass'n,* 23 Utah 2d 222, 225–26 n. 2, 461 P.2d 290, 293 n. 2 (1969) (citation and emphasis omitted)); *see also Orton v. Carter,* 970 P.2d 1254, 1260 (Utah 1998) (applying *Limb* ); 5 C.J.S. *Appeal & Error* § 714 (1993) ("Generally, the appellate court· may affirm the judgment where it is correct on any legal ground or theory disclosed by the record, regardless of the ground, reason, or theory adopted by the trial court."). Moreover, "[a] party to an appeal does not have a constitutional right to have a cause of action decided on a particular ground." *DeBry v. Noble,* 889 P.2d 428, 444 (Utah 1995).

¶ 11 Bayles raises in this appeal the same issue we previously decided in *DeBry* when he argues that the court of appeals denied him due process of law by affirming the trial court's decision on an alternate ground. In *DeBry,* the court of appeals affirmed the dismissal of a complaint on the basis that the claims were barred by sovereign immunity. *Id.* The DeBrys argued before this court that they had been denied procedural due process because the court of appeals based its affir-

mance on an issue that was not briefed or presented to the court of appeals or to the trial court. *Id.* We rejected the DeBrys' due process argument and held that the "affirm on any ground" rule "does not deprive a party of due process." [2] *Id.*

¶ 12 Bayles has not provided us with any cogent reason to abandon our holding in *DeBry,* and he certainly has not met the "substantial burden of persuasion" we require of "[t]hose asking us to overturn prior precedent." *State v. Menzies,* 889 P.2d 393, 398 (Utah 1994). Therefore, we will not revisit our settled precedent on this point but simply apply it to the present case.

¶ 13 As an initial matter in the case at hand, we do not find that the court of appeals erred in affirming the trial court's order on alternate grounds. As the rule states, an appellate court *may* affirm the judgment appealed from " 'if it is sustainable on any legal ground or theory *apparent on the record.* ' " *Dipoma,* 2001 UT 61 at ¶ 18, 29 P.3d 1225 (emphasis added) (quoting *Limb,* 23 Utah 2d at 225–26 n. 2, 461 P.2d at 293 n. 2).[3]

---

2. Bayles relies upon both the United States and Utah constitutional guarantees of due process in his argument. His analysis does not appear to differentiate between the two independent due process clauses and their attendant rights. In any event, we have held that "Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution." *In re Worthen,* 926 P.2d 853, 876 (Utah 1996); *see also Untermyer v. State Tax Comm'n,* 102 Utah 214, 222–23, 129 P.2d 881, 885 (Utah 1942). Therefore, our analysis of questions concerning procedural due process under the due process provisions of the United States and Utah constitutions are also substantially the same.
Furthermore, Bayles similarly couches his argument in the context of the constitutional guarantee of due course of law under the Utah constitution. We recently decided in *Miller v. USAA Cas. Ins. Co.,* 2002 UT 6, ¶ 38, 44 P.3d 663, that the guarantee of a "day in court" on the procedural level is substantially the same under the due process of law and due course of law provisions of the Utah constitution. Wrapped up in the bundle of procedural rights associated with a party's right to a "day in court" is the fundamental right of timely and adequate notice and an opportunity to be heard in a meaningful way. *See id.* at ¶ 42. Therefore, inasmuch as the procedural guarantees associated with the due pro-

cess of law clause and the due course of law provision are substantially the same, the analysis is the same to determine whether Bayles was deprived of adequate and timely notice and an opportunity to be heard in a meaningful way under both the open courts provision and the due process clause of the Utah constitution. *See id.* In her concurrence, Chief Justice Durham incorrectly accuses the majority of collapsing federal due process, state due process, and state open courts analysis into a monolithic and uniform construct. This is neither the intent nor the effect of the majority's position. The majority's assertion that the rights and legal analysis associated with these various constitutional provisions are *substantially the same* does not indicate that this court moves in "lockstep" with the United States Supreme Court's due process analysis or foreclose our ability to decide in the future that our state constitutional provisions afford more rights than the federal Constitution.

3. While we acknowledge the existence and validity of the "affirm on any ground" rule of appellate review, we caution that it is a tool available only in limited circumstances. It certainly is limited to *affirming* decisions on alternate grounds and does not give appellate courts permission to search the record for alternate grounds to *reverse* a decision. *See Limb v. Federated Milk Producers Ass'n,* 23 Utah 2d 222, 225–26 n. 2, 461 P.2d 290, 293 n. 2 (1969). This rule

¶ 14 Here, the court of appeals based its affirmation of the lower court's decision on the Cohabitant Abuse Act. *Bailey*, 2001 UT App 34 at ¶ 11, 18 P.3d 1129. The applicability of the Cohabitant Abuse Act was apparent on the record. The record is rife with references to this statute. The verified petition itself, on its first page, makes reference to a provision of the Cohabitant Abuse Act.[4] Moreover, the record clearly indicates that, at least at the early stages of the action in the lower court, the parties themselves were proceeding under the assumption that the Cohabitant Abuse Act was the applicable statute. After the verified petition was filed and the ex parte protective order was issued, Bayles moved to strike Jeff Bailey and Sharo Burtenshaw from the ex parte order and sought to vacate the order altogether. In bringing his motions and challenging the verified petition and the ex parte protective order, Bayles relied upon the Cohabitant Abuse Act. The stated basis for his motions as explained in his memorandum of law in support of the motions was the Cohabitant Abuse Act. Bailey's memorandum of law in opposition to Bayles' motions also relied on the Cohabitant Abuse Act. Finally, during the course of the bench trial, Bailey explicitly referenced and based her position on the Cohabitant Abuse Act and the case of *Strollo v. Strollo*, 828 P.2d 532 (Utah Ct.App.1992).[5]

¶ 15 In view of these numerous references in the record, we conclude that the alternate ground relied upon by the court of appeals in affirming the trial court's decision was apparent on the record, and therefore, under the "affirm on any ground" rule, was a proper ground on which to affirm.

■ ¶ 16 As to Bayles' argument that he was surprised when the court of appeals affirmed the trial court's decision based upon the Cohabitant Abuse Act, and as such, was denied adequate and timely notice and an opportunity to be heard, we find Bayles' position to be disingenuous at best given the fact that he relied earlier in the course of the action upon the very statute used by the court of appeals in affirming the trial court's decision.[6] Bayles cannot claim to have been denied adequate notice and an opportunity to be heard on issues arising under the Cohabitant Abuse Act when he himself made resort to it in opposing the verified petition and ex parte protective order before the trial court. Knowing that the Cohabitant Abuse Act was the applicable statute and having previously relied upon it, Bayles could have appealed the trial court's decision on the grounds that the trial court applied the wrong statute and that the facts as found by the trial court were insufficient under the correct statute. He did not do so.

¶ 17 Therefore, Bayles was not deprived of his rights of due process of law and due course of law when the court of appeals affirmed the trial court's decision on alternate grounds, and the court of appeals did not err when it found from the record that

---

does not give appellate courts license to pull from thin air. alternate or novel legal theories with which to affirm decisions below. Even where an alternate legal theory or ground is apparent to the appellate court upon its review, such alternate ground may come as a surprise to the parties. In certain circumstances, then, sound and prudent appellate practice and procedure might dictate that the appellate court afford the parties an opportunity to address and argue an alternate legal theory or ground in supplemental briefs to the court. Such a practice might act to placate the parties' legitimate concerns regarding timely and adequate notice and opportunity to be heard in a meaningful way without necessarily sacrificing the goal of judicial economy embodied in the "affirm on any ground" rule.

4. The verified petition for protective order states in bold on its face that "Petitioner is advised that knowingly falsifying any statement or information to obtain a protective order may subject petitioner to felony prosecution under Utah Code § 30–6–4(b)." The cited code section is a provision of the Cohabitant Abuse Act. *See* Utah Code Ann. §§ 30–6–1 to –14 (1999).

5. In *Strollo*, the court of appeals was asked to interpret a previous, yet substantially similar, version of section 30–6–2(1) of the Utah Code, the very provision of the Cohabitant Abuse Act relied upon by the court of appeals in affirming the trial court's decision in this case. 828 P.2d at 533–34.

6. It is clear from the record that Bayles was not only familiar with, but apparently versed in, the provisions of the Cohabitant Abuse Act. At one point in his memorandum of law in support of his motions, he specifically quotes Utah Code Ann. § 30–6–2(1) in its entirety.

the trial court's decision could be affirmed based on the alternate legal ground of the Cohabitant Abuse Act.

## II. ADDITIONAL FINDINGS OF FACT

¶ 18 We next address Bayles' argument that the court of appeals erred by exceeding its authority and proper role when it allegedly found additional facts beyond those found by the trial court, and consequently, denied Bayles due process and due course of law by not giving him an opportunity to dispute those new facts or argue their relevance and applicability under the court of appeals' new legal theory.

¶ 19 "The appellate court is entrusted with ensuring legal accuracy and uniformity and should defer to the trial court on factual matters." *Willey v. Willey,* 951 P.2d 226, 230–31 (Utah 1997); *see also State v. Pena,* 869 P.2d 932, 936 (Utah 1994); *State v. Thurman,* 846 P.2d 1256, 1266 (Utah 1993). It is inappropriate for an appellate court to disregard the trial court's findings of fact and to assume the role of weighing evidence and making its own findings of fact. *Willey,* 951 P.2d at 230; *see also* 5 C.J.S. *Appeal and Error* § 710 (1993) ("The reviewing court is confined to the facts specially found by the trial court [and t]he reviewing court may not make findings of fact for or against appellant, and cannot consider evidence to find facts or make a decision upon them or supplement the facts found by the trial court with any additional facts ...." (footnotes omitted)).

¶ 20 As we have indicated above, an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record. *See supra* part I. In the limited circumstance that an appellate court chooses to affirm on an alternate ground, it may do so only where the alternate ground is apparent on the record. When an alternate theory is apparent on the record, the court of appeals must then determine whether the facts as found by the trial court are sufficient to sustain the decision of the trial court on the alternate ground. The court of appeals is limited to the findings of fact made by the trial court and may not find new facts or reweigh the evidence in light of the new legal theory or alternate ground.

¶ 21 In the case before us, the trial court made specific findings of fact. *See supra* note 3. Bayles argues that the court of appeals went beyond the trial court's findings of fact by searching the record for additional facts. According to Bayles, the court of appeals then relied on those additional facts in sustaining the trial court's decision under a new legal theory.

¶ 22 After reviewing the trial court's findings of fact and the court of appeals' opinion, we agree with Bayles that the court of appeals in certain instances found facts beyond those found by the trial court. In particular, the court of appeals found that "Bayles had pursued a pattern of physical violence that included pushing, slapping, and punching Bailey." *Bailey,* 2001 UT App 34 at ¶ 13, 18 P.3d 1129. The trial court did not find that there had been a pattern of physical violence in which Bayles had pushed and punched Bailey. The trial court simply found that during their "stormy marriage of 27 years" Bayles "physically abused her by slapping her." Moreover, the court of appeals found that "in both her petition and during her testimony, Bailey clearly indicated to the trial court that she experienced a constant fear of Bayles, a fear that was aggravated with every incident." *Id.* at ¶ 14. There was no finding by the trial court that Bailey was in constant fear of Bayles or that her fear was increased with every incident involving Bayles. The court of appeals, by its own admission, relied not on the trial court's findings of fact, but on the verified petition and Bailey's testimony in finding that Bailey was in constant fear of Bayles. In these two instances, the court of appeals assumed the role of fact finder and in doing so exceeded its proper role. Despite the court of appeals' error in finding additional facts to bolster its affirmation of the trial court's decision to issue a permanent protective order, the trial court's findings of fact as stated in its memorandum decision are sufficient to uphold the court of appeals' affirmation of the trial court. In other words, even when the additional facts found by the court of appeals are stripped away, we conclude

that the court of appeals was correct in affirming the trial court on the alternate ground of the Cohabitant Abuse Act because the trial court's findings of fact are sufficient to support the issuance of the permanent protective order under the statute.

¶ 23 We read statutes in accordance with their plain language. *Associated Gen. Contractors v. Bd. of Oil, Gas & Mining, Dep't of Natural Res.,* 2001 UT 112, ¶ 27, 38 P.3d 291. The plain language of section 30–6–2(1) sets forth the requirements that a party must meet to obtain a protective order. The statute provides two alternative grounds upon which a person may seek a protective order. The statute provides:

> Any cohabitant ... who has been subjected to abuse or domestic violence, *or* to whom there is a substantial likelihood of immediate danger of abuse or domestic violence, may seek an ex parte protective order or a protective order in accordance with this chapter, whether or not that person has left the residence or the premises in an effort to avoid further abuse.

Utah Code Ann. § 30–6–2(1) (1999) (emphasis added). The statute, in relevant part, defines "cohabitant" as a "person ... who is or was a spouse of the other party." Utah Code Ann. § 30–6–1(2)(a) (1999). "Abuse" is defined as "attempting to cause, or intentionally or knowingly causing to an adult ... physical harm or intentionally placing another in fear of imminent physical harm." Utah Code Ann. § 30–6–1(1) (1999).

¶ 24 Therefore, according to the statute, in order for Bailey to obtain a protective order, she was required to show that she was a cohabitant and *either* that she had been subjected to abuse or domestic violence, *or* that there was a substantial likelihood of immediate danger of abuse or domestic violence to her.[7] Bailey was a cohabitant as defined by the Cohabitant Abuse Act. This fact is not disputed by Bayles, and the trial court makes specific reference to the parties' twenty-seven-year marriage. Bailey also had been "subjected to abuse." *Id.* § 30–6–2(1). The trial court found that during their "stormy" twenty-seven-year marriage, Bayles "physically abused [Bailey] by slapping her." Such incidences of physical abuse constitute physical harm under the terms of the statute. Furthermore, the trial court found that Bayles threatened Bailey during their marriage by holding a pistol to her neck and by telling her he could kill her anytime he wanted. This behavior meets the statutory definition of "abuse" in that by doing those things Bayles "intentionally plac[ed] [Bailey] in fear of imminent physical harm." *Id.* § 30–6–1(1). The court of appeals' decision to affirm on alternate grounds was supported by the trial court's original findings of fact.[8] Therefore, in view of the specific findings of fact made by the trial court, the court of appeals was correct in its decision to affirm the trial court's issuance of the permanent protective order on the alternate ground of section 30–6–2(1).

7. In interpreting and applying section 30–6–2(1), the dissent concludes that "[u]nder the Cohabitant Abuse Act and the Cohabitant Abuse Procedures Act, a petitioner is granted a protective order when her or she is in fear of imminent physical harm." While this may be an accurate reading and interpretation of the second alternative ground for seeking a protective order under the statute, it ignores the plain language of the statute's first ground for seeking a protective order that provides that a petitioner may *alternatively* seek a protective order if he or she has been "subjected to abuse or domestic violence."

8. The dissent disagrees with the majority, stating that "Bayles' conduct [i.e., physical abuse] during their marriage may have constituted grounds for divorce, but not grounds, standing alone, for a protective order eighteen months later." This statement, however, ignores the plain language

of the statute that requires a cohabitant merely to have been subjected to physical harm, Utah Code Ann. § 30–6–2(1), and does not take into account the legislature's specific enactment of Utah Code Ann. § 30–6–4.4 (1998), which prohibits a court from "deny[ing] a petitioner [a protective order] solely because of a lapse of time between an act of ... abuse and the filing of the petition for an order of protection." *Id.* The controlling fact for the purposes of the statute, therefore, is not that the abuse took place eighteen months or more prior to the filing of a petition for a protective order, but that Bailey in fact suffered abuse at some point while she was a cohabitant. The trial court found that Bailey suffered such abuse or physical harm during her marriage to Bayles; a fact even the dissent recognizes and accepts. Therefore, the requirements of the statute have been met.

¶ 25 The fact that the court of appeals found additional facts beyond those found by the trial court does give us cause for concern and motivates us to remind the court of appeals of its proper role. It does not, however, in this particular situation, compel us to reverse the court of appeals' affirmation of the trial court's decision.

¶ 26 As to the constitutional issue raised by Bayles in connection with the court of appeals' improper assumption of the role of fact finder in this case, "[i]t is fundamental that constitutional issues should be avoided if the case can be properly decided on non-constitutional grounds." *Vigos v. Mountainland Builders, Inc.*, 2000 UT 2, ¶ 8, 993 P.2d 207; *see also World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 257 (Utah 1994); *State v. Anderson*, 701 P.2d 1099, 1103 (Utah 1985); *State v. Wood*, 648 P.2d 71, 82 (Utah 1981); *Hoyle v. Monson*, 606 P.2d 240, 242 (Utah 1980). Because the decision of the court of appeals to affirm on the alternate ground of the Cohabitant Abuse Act was correct in that this alternate ground was apparent on the record and the issuance of the permanent protective order was sufficiently supported by the findings of fact made by the trial court and without recourse to any additional facts found by the court of appeals, we need not reach the question of whether the court of appeals' assumption and usurpation of the role of fact finder offended Bayles' constitutional guarantees.

## CONCLUSION

¶ 27 In sum, the court of appeals did not err when it affirmed the decision of the trial court on alternate grounds found in the Cohabitant Abuse Act, nor did it deprive Bayles of his rights of due process of law under the Fourteenth Amendment to the United States Constitution or article I, section 7 of the Utah Constitution or his right to due course of law under article I, section 11 of the Utah Constitution in doing so. Further, despite exceeding its proper role by assuming the role of fact finder and finding additional facts beyond those found by the trial court, the court of appeals did not err in affirming the trial court's issuance of a permanent protective order because the trial court's findings of fact were sufficient to support the permanent protective order under the Cohabitant Abuse Act. For the foregoing reasons, we affirm the court of appeals' decision.

¶ 28 Associate Chief Justice DURRANT and Justice WILKINS concur in Justice RUSSON'S opinion.

DURHAM, Chief Justice, concurring:

¶ 29 I join in the analysis of the majority opinion except for the comment contained in footnote 2, which appears to suggest that this court moves permanently in "lockstep" with the U.S. Supreme Court when construing due process under the Utah Constitution. There is no precedent for the view. The 1942 case referred to in the footnote, *Untermyer v. State Tax Comm'n*, 102 Utah 214, 129 P.2d 881 (Utah 1942), merely comments on the similarity in language between the state and federal provisions, and observes that therefore "[d]ecisions of the Supreme Court of the United States on the due process clauses of the Federal Constitution are 'highly persuasive' as to the application of that clause of our state constitution." That we will look to federal due process analysis, as well as to that of other states, in interpreting the due process clause of Utah's constitution, is axiomatic, but it does not mean that we will routinely collapse state and federal analysis in cases where the parties make arguments for independent construction. *In re Worthen*, 926 P.2d 853 (Utah 1996), also cited by the majority, also makes that clear. It does say, as the majority notes, that "Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained [in the federal constitution]." But it then cites Utah cases in which Utah courts have delineated the requirements of due process for state constitutional purposes. In other words, there is a difference between acknowledging that state due process guarantees are the same as federal, and suggesting that this court may never interpret or apply the guarantees in a manner different from the federal courts' interpretation of the federal language. *See In re Criminal Investigation*, 754 P.2d 633, 647 (Utah 1988) (noting that scope of state constitutional privilege against self incrimina-

tion is similar to federal, but that on specific questions, this court "will not necessarily follow the federal model"). Moreover, the majority's footnote also appears to collapse analysis under article I, section 11 with both state and federal due process, a notion that is highly peculiar in view of the fact that there is no federal counterpart to our "open courts" or "remedies" clause.

HOWE, Justice, dissenting:

I dissent. When the additional facts found by the court of appeals are "stripped away" as countenanced by the majority, there remains no alternate ground on which the court of appeals can be affirmed.

Bailey petitioned for and received an ex parte protective order against Bayles. Her petition was brought pursuant to the Cohabitant Abuse Act, section 30–6–1 to –14, and the Cohabitant Abuse Procedures Act, section 77–36–1 to –10.[1] The "domestic violence," which she alleged in her petition, and which she sought protection against, was stalking by her ex-husband Bayles. Stalking is one of many acts of domestic violence listed in section 77–36–1(2) for which a protective order may be sought. The elements of stalking are found in our criminal code in section 76–5–106.5.

Six months after the protective order had been issued, Bayles moved the trial court to dismiss it. In response, Bailey moved to make it permanent. The trial court held a hearing and found that in the four months preceding the filing of the petition for a protective order, Bayles had stalked Bailey on five different occasions. No other acts of domestic violence were found in support of the order. After finding the five separate acts of stalking, the court found that Bayles knew or should have known that his stalking would cause emotional distress to Bailey because of their stormy marriage of twenty-seven years, during which he called her foul and obscene names, physically abused her, and threatened her with a pistol.

Bayles appealed to the court of appeals contending that the evidence was insufficient to support the trial court's findings of fact that he had stalked her. The court of appeals declined to address Bayles' contention that the evidence of stalking was insufficient but after making additional findings of fact, affirmed the trial court on the alternate ground that Bayles had engaged in a pattern of physical violence against Bailey which caused her to fear him.

The majority opinion correctly holds that the court of appeals erred in making additional findings of fact to support the alternate ground upon which it relied. However, the majority opinion then proceeds to affirm the court of appeals based solely on the trial court's finding that during their "stormy marriage of twenty-seven years," Bayles physically abused Bailey by slapping her. That finding, however, is clearly insufficient to support the protective order. Bayles' conduct during their marriage may have constituted grounds for divorce, but not grounds, standing alone, for a protective order eighteen months later. The trial court's finding of physical abuse during the marriage was made only to demonstrate why Bailey suffered emotional distress when Bayles stalked her on the five occasions and was not intended as a finding of separate and independent acts of domestic violence on which alone to predicate the protective order. She did not seek the protective order on the grounds she had been abused during her marriage, but on the grounds that after their separation, divorce, and her remarriage, Bayles stalked her. Under the Cohabitant Abuse Act and the Cohabitant Abuse Procedures Act, a petitioner is granted a protective order when he or she is in fear of imminent physical harm. Utah Code Ann. § 30–6–1(1). As the court of appeals held in *Strollo v. Strollo*, 828 P.2d 532 (Utah Ct.App.1992), the Cohabitant Abuse Act protects those who are reasonably in fear of physical harm resulting from past conduct coupled with the present threat of future harm. In this case, stalking was the present threat. The majority does not identify any other present threat but affirms on "the alternate grounds of section 30–6–2(1)."

---

1. Contrary to a statement in the majority opinion, Bayles does not dispute that the petition was brought pursuant to these statutes and that they provide the applicable law.

The majority relies on section 30–6–4.4 for its holding that no present threat of harm need be shown. It reads too broadly that section which simply provides that "the court may not deny a petitioner relief requested pursuant to this chapter *solely* because of a lapse of time between an act of domestic violence or abuse and the filing of the petition for an order of protection" (emphasis added). That section is drawn narrowly and does not purport to do away with the requirements of *Strollo* that the petitioner be reasonably in fear of physical harm resulting from past conduct coupled with a present threat of future harm.

In summary, when the additional findings of facts made by the court of appeals are "stripped away," as countenanced by the majority, the finding of the trial court that there had been abuse eighteen months earlier during their marriage is, standing alone, insufficient to support a protective order. I would reverse the court of appeals and remand this case to it to determine whether the evidence is sufficient to support the trial court's findings of stalking, which is the only possible ground upon which the protective order can be supported.