2002 UT App 244

**STATE of Utah, Plaintiff and Appellee,**

v.

**Dale Demont HARDY, Defendant and Appellant.**

**No. 20010396–CA.**

Court of Appeals of Utah.

July 18, 2002.

Linda M. Jones and Robert K. Heineman, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General and Jeanne B. Inouye, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

BENCH, Judge:

¶ 1 Defendant appeals from his convictions for one misdemeanor and two felony counts of violating a protective order. We affirm.

## BACKGROUND [1]

¶ 2 On January 8, 1999, as a result of a domestic violence incident, Courtney Hardy obtained an ex parte protective order against Defendant. One provision of the order prohibited Defendant from "directly or indirectly contacting" Ms. Hardy. The deputy who served the protective order on Defendant explained the provisions of the protective order, including the section prohibiting direct or indirect contact, which the deputy described to include letter writing. On January 25, a hearing was held, at which Defendant was present, and the protective order was made permanent.

---

1. "In setting out the facts from the record on appeal, we resolve all conflicts and doubts in favor of the jury's verdict and the rulings of the trial court." *State v. Tolman,* 775 P.2d 422, 422–23 (Utah Ct.App.1989) (quotations and citations omitted).

¶ 3 In April 1999, Defendant pleaded guilty to one misdemeanor count of violation of the protective order for three phone calls he made to Ms. Hardy after the protective order was in effect. The plea was held in abeyance conditioned upon Defendant committing no further violations.

¶ 4 In June 1999, two letters from Defendant arrived at the home then occupied solely by Ms. Hardy and her four children, whose ages ranged from one to eight years old. The letters were addressed to the children, although only two of them were old enough to read, and they read at a very rudimentary level. Excerpts from the June 7 letter include:

> I realized that there are few people that really know me because they have not taken the time to have a conversation with me. I'm not talking about talking at/to me—hello goodbye stuff. But really converse like Mommy and I did. Although I feel that I attempted to get to know her, I feel that she did not know me well enough, but I allways [sic] wanted her to. She seemed to have too much to do when I needed to talk or she was tired when I thought she would be willing to hear me.
>
> . . . .
>
> I still believe that your mommy would trust me and like me if she would converse with me—that is why I wanted her to go with me on the cruise. I would never try to talk her into something or change her mind.

The letter also contained a recipe for Stuffed Steelhead Trout, although none of the children could cook.

¶ 5 The June 24 letter contained statements such as:

> I only wish I knew what I have done to have you treat me this way.
>
> . . . .
>
> I can change and do things differently in the future and forget the past. But how do I forget my own flesh & blood and my wife that I thought wanted me like I need her?
>
> . . . .
>
> I have now had nearly six months of this yet I cannot understand why one person would want to hurt another person this way. I am too naive or dumb to "get it." One of Mommy's friends even said "get a life" to me. Just how do I do that?
>
> . . . .
>
> Please forgive me someday and phone or send pictures of you and especially mommy if you can. I can not help being in love and I know that someday you will understand me if you take time to be with me.

¶ 6 Based on these letters, Defendant was charged with and convicted by a jury of two counts of felony violation of a protective order. Additionally, Defendant was found in violation of his abeyance agreement and his guilty plea was entered on the misdemeanor count. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Defendant challenges the trial court's ruling that the State presented sufficient evidence to convict him of the felony counts and to conclude that he had violated his abeyance agreement.

> We will reverse a jury verdict only when, after viewing the evidence and all inferences drawn therefrom in a light most favorable to the verdict, we find that the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.

*State v. Silva,* 2000 UT App 292, ¶ 13, 13 P.3d 604 (quotations and citations omitted).

¶ 8 Second, Defendant contends that Utah Code Ann. § 30–6–4.2(2)(b) (Supp.2001), which permits a court to include in a protective order a prohibition against all contact, direct or indirect, and Utah Code Ann. § 76–5–108 (1999), which provides criminal penalties for violations of a protective order, are overly broad and impermissibly vague in violation of the United States Constitution. "[W]hen reviewing statutes for constitutionality, a statute is presumed constitutional and we resolve any reasonable doubts in favor of constitutionality." *Salt Lake City v. Lopez,* 935 P.2d 1259, 1262 (Utah Ct.App.1997) (quotations and citations omitted) (alteration in original).

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

■ ¶ 9 Defendant argues that subsection 30–6–4.2(2)(b) should be construed to prohibit only violent, abusive, threatening, or harassing contact or communication. Subsection 30–6–4.2(2)(b) provides that "[a] court may grant the following relief without notice in an order for protection or a modification issued ex parte: . . . prohibit the respondent from harassing, telephoning, contacting, or otherwise communicating with the petitioner, directly or indirectly." *Id.*

■ ¶ 10 "[O]ur primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language. . . . We need look beyond the plain language only if we find some ambiguity." *State v. Burns,* 2000 UT 56, ¶ 25, 4 P.3d 795 (internal citation omitted). "When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction." *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995). We conclude that there is nothing ambiguous about the terms "contacting," "otherwise communicating," "directly," or "indirectly" such as to warrant construing them to mean something other than their common and accepted meaning. We also note that construing the statute as Defendant suggests would render the phrases superfluous since subsection 30–6–4.2(2)(b) expressly prohibits harassing contact, and subsection 30–6–4.2(2)(a) prohibits threats of abuse or violence. *See Hall v. Utah State Dept. of Corr.,* 2001 UT 34, ¶ 15, 24 P.3d 958 (stating court will "avoid interpretations that will render portions of a statute superfluous or inoperative").

■ ¶ 11 Defendant's challenge to the sufficiency of the evidence is really a challenge to the inference the jury was required to make that although addressed to the children, the letters were intended as communication with Ms. Hardy. He argues that because he testified that the letters were intended for his children when they grow up, the jury could not have inferred that they were intended for Ms. Hardy. However, " '[t]he existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict.' " *Id.* at ¶ 14 (quoting *State v. Howell,* 649 P.2d 91, 97 (Utah 1982)) (alteration in original). Further, "[i]t is within the exclusive province of the jury to judge the credibility of the witness and the weight of the evidence." *Howell,* 649 P.2d at 97.

¶ 12 Our review of the record reveals evidence including testimony as to the children's level of understanding and lack of reading skill, the significance within the marital relationship of certain information in the letters, and of Defendant's previous attempts to contact Ms. Hardy through letters. We conclude that this evidence was sufficient such that the jury could reasonably infer that, although addressed to the children, the letters were really an attempt to communicate with Ms. Hardy in violation of the protective order. *See State v. Boyd,* 2001 UT 30, ¶ 16, 25 P.3d 985 ("So long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops." (Quotations and citations omitted.)).

### II. CONSTITUTIONALITY

#### A. Waiver of Constitutional Issues in Misdemeanor Case

■ ¶ 13 The State argues that Defendant has failed to adequately preserve his claims regarding the statutes' constitutionality in the misdemeanor case. We agree. Defendant entered an unconditional guilty plea in that case, which was held in abeyance for one year. The trial court found that Defendant violated the terms of the agreement, and his guilty plea was entered. "By pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects, including alleged pre-plea constitutional violations." *State v. Parsons,* 781 P.2d 1275, 1278 (Utah 1989).

#### B. Preservation of Vagueness Claim in Felony Case

■ ¶ 14 "Utah courts require specific objections in order 'to bring all claimed errors to the trial court's attention to give the

court an opportunity to correct the errors if appropriate.'" *State v. Brown*, 856 P.2d 358, 361 (Utah Ct.App.1993) (quoting *VanDyke v. Mountain Coin Mach. Distrib.*, 758 P.2d 962, 964 (Utah Ct.App.1988)). At the close of the State's case, Defendant made a motion to dismiss the charges based on his contention that the statute was overbroad in that the protective order limited constitutionally protected speech. A discussion between defense counsel and the court ensued as to the exact nature of Defendant's objection. At no time during this discussion did Defendant suggest to the trial court that the statute was unconstitutionally vague. Defendant argues on appeal that the two doctrines go hand in hand; therefore, he need not have specifically raised vagueness to preserve the issue for appeal. We disagree.

¶ 15 "The specificity requirement arises out of the trial court's need to assess allegations by isolating relevant facts and considering them in the context of the specific legal doctrine placed at issue." *Id.* The relevant facts and legal arguments related to Defendant's claim of overbreadth are not the same as those related to his claim of vagueness. Therefore, we conclude that Defendant did not raise the issue of vagueness "to a level of consciousness such that the trial judge [could] consider it." *Id.* (quotations and citations omitted). Defendant makes no argument as to plain error or exceptional circumstances, thus we decline to address his vagueness claim on appeal. *See id.* at 359 ("As a general rule, appellate courts will not consider an issue, including a constitutional argument, raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances.").

## C. Overbreadth

¶ 16 Defendant argues that subsection 30–6–4.2(2)(b) is unconstitutionally overbroad in that it gives the court power to limit all speech directed at Ms. Hardy, even "inno-cent speech." Consequently, Defendant contends that section 76–5–108, which creates a criminal penalty for violating a protective order, is also overbroad. "Statutory language is overbroad if its language proscribes both harmful and innocuous behavior." *Elks Lodges 719 & 2021 v. Department of Alcoholic Beverage Control*, 905 P.2d 1189, 1203 (Utah 1995). When evaluating a content-neutral injunction on speech, such as a protective order, we consider "whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765, 114 S.Ct. 2516, 2525, 129 L.Ed.2d 593 (1994).

¶ 17 The state has an inarguably significant interest in protecting the health and well-being of its citizens. In furtherance of this goal, the state has created a mechanism whereby the victims of domestic violence may obtain civil orders of protection against their abusers. *See* Utah Code Ann. § 30–6–2 (1999). As part of this protection, the court may prohibit the abuser from having any contact, direct or indirect, with the victim or the victim's family. *See* Utah Code Ann. § 30–6–4.2(2)(b). Although subsection 30–6–4.2(2)(b) appears to sweep broadly because it allows courts to prohibit all communication between two people, the statute is actually quite narrowly crafted. Before a protective order may issue, a court must first conclude that the parties to the protective order are cohabitants, and that a cohabitant has been "subjected to abuse or domestic violence, or . . . there is a substantial likelihood of immediate danger of abuse or domestic violence." *Id.* Without the particular relationship of "cohabitants" and without previous instances or the "substantial likelihood" of domestic violence or abuse, the court may not restrict the protective order respondent's right to speak and associate freely.[2] *Id.* Thus, we conclude that section 30–6–4.2 is not impermissibly overbroad because it is narrowly drafted to "burden no more speech than necessary to

---

2. We note that throughout the protective order's duration the court may, on its own motion or that of either party, modify the provisions of the protective order. *See* Utah Code Ann. § 30–6–4.2 (Supp.2001). Thus, as situations arise where communication between the parties is necessary regarding matters involving the children such as visitation arrangements, medical needs, school performances, etc., the court may tailor the protective order to permit and provide guidelines for communication regarding these subjects.

serve a significant government interest." *Madsen,* 512 U.S. at 765, 114 S.Ct. at 2525. Consequently, we also conclude that section 76–5–108, which provides criminal penalties for violating a protective order, is also not overly broad.

¶ 18 We further reject Defendant's contention that the statute may only prohibit "harassing, violent, abusive, threatening, libelous, or obscene" communication but not "innocent" communication. We agree with the South Dakota Supreme Court that "[t]he cycle of violence so common to domestic abuse, includes attempts at reconciliation often amounting to nothing more than harassment." *State v. Hauge,* 547 N.W.2d 173, 176 (S.D.1996). Further, "[i]n the middle of domestic strife, preserving the mental and emotional health of the vulnerable must override other less compelling interests." *Id.* The State points out that innocent comments between estranged cohabitants can easily escalate into arguments that result in incidences of domestic violence. If a need arises for Defendant to communicate with Ms. Hardy regarding visitation or financial matters, he has an available remedy in the form of a motion to modify the protective order wherein the court may provide appropriate limitations for that type of communication. *See supra* note 2.

### CONCLUSION

¶ 19 We conclude that the State presented sufficient evidence of all the elements of the crime and that the statute is not ambiguous. Further, we conclude that Defendant has not adequately preserved for our review his constitutional arguments in the misdemeanor case and his vagueness argument in the felony case. Finally, we conclude that the statutes at issue are not unconstitutionally overbroad.

¶ 20 Accordingly, Defendant's convictions are affirmed.

¶ 21 WE CONCUR: JAMES Z. DAVIS, Judge, and GREGORY K. ORME, Judge.