2005 UT App 431

**NEXMED, INC., Plaintiff and Appellant,**

v.

**CLEALON MANN; The Somerset Group Ltd. aka Somerset Group, Inc.; and Genie Total Products, Inc., Defendants and Appellees.**

No. 20040525–CA.

Court of Appeals of Utah.

Oct. 14, 2005.

Paul H. Ashton and Wallace T. Boyack, Boyack Ashton & Jenkins LC, Salt Lake City, for Appellant.

James N. Barber, Salt Lake City, for Appellees.

Before BILLINGS, P.J., McHUGH and ORME, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 NexMed, Inc. (NexMed) appeals from a bench trial finding in favor of Clealon Mann (Mann).[1] NexMed argues that the trial court erred in finding that NexMed did not have the right to cancel and rescind the issuance of shares of company stock to Mann and his company, Somerset Group Ltd. (Somerset). We affirm.

## BACKGROUND

¶ 2 NexMed is a Nevada corporation. The corporation was formerly known as Target Capital, Inc. (Target) and BioElectric, Inc. (BioElectric).[2] In 1992, Mann acquired effective control of Target by purchasing 100% of the outstanding shares of Genie Total Products, Inc. (Genie), which owned the largest outstanding block of shares of Target. At the time Mann purchased Target through Genie, Target was a shell corporation—it had no assets or liabilities and the shares in Target had no value.

¶ 3 Mann began to seek business opportunities for Target. He met Peter Lathrop who, along with Steven Johnston, invented an electronic device for the treatment of the herpes virus (Herpes Device). In December of 1993, Mann and Lathrop entered into an Asset Purchase Agreement (Purchase Agreement) whereby Lathrop and Johnston agreed to sell their Herpes Device patent to Target in exchange for 4.35 million common shares of Target. Control of Target would be turned over to Lathrop, Johnston, and Cherie Castleberry, who was Lathrop's wife. At the time of the Purchase Agreement, Lathrop and Mann also agreed that Mann would be awarded 2.5 million Target shares for his work on behalf of Target and as compensation for his role in kickstarting the Company. Target and Genie also entered

---

1. The Defendants in this action are Clealon Mann; the Somerset Group, Ltd. aka Somerset Group, Inc. (Somerset); and Genie Total Products, Inc. (Genie). At all relevant times Mann owned Somerset and Genie. For ease of refer-ence, we refer to the Defendants collectively as Mann.

2. For ease of reference, we refer to these entities collectively as the Company.

into a Business Consultant Agreement dated December 1, 1993, whereby Target employed Genie to act as a consultant from December 1, 1993 to December 1, 1996. Genie was not paid any money under the Business Consultant Agreement.

¶4 After the Purchase Agreement was signed, Target's directors held a board meeting during which they adopted resolutions, called a shareholders' meeting, and set the resolutions to be voted on by the shareholders. The directors also instructed the officers to solicit proxies from the shareholders. A Proxy Statement, dated January 7, 1994, was sent to all stockholders announcing a meeting to be held on January 18, 1994. The stockholders approved the Proxy Statement's resolutions to (1) approve acquisition of the Herpes Device from Lathrop and Johnston for 4.35 million shares of the Company, (2) change the name of Target to BioElectric, and (3) elect Lathrop, Johnston, and Castleberry as the directors of the Company. The Proxy Statement made three references to the proposal to issue 2.5 million shares of Target stock to Somerset. On January 18, 1994, a meeting of Target's stockholders was held whereby the stockholders approved the three resolutions described above. However, no resolution to issue shares to Somerset was presented at the meeting or voted upon by the stockholders.

¶5 On April 11, 1994, the three directors of BioElectric signed a Unanimous Written Consent Resolution (Resolution), which directed BioElectric to issue restricted shares of its common stock to seven people, including 4 million shares to Lathrop, 350,000 shares to Johnston, and 2.5 million shares to Genie, as the designated beneficiary of the 2.5 million shares to be issued to Mann.

¶6 The Resolution was amended (Amended Resolution) to provide that Mann's 2.5 million shares would go to Somerset instead of Genie. There is conflicting evidence about how the Amended Resolution was created. At some point, Mann changed the Resolution

to read that Somerset would receive the 2.5 million shares. Lathrop testified that he signed two resolutions, one in favor of Genie, and one to Somerset. Johnston did not recall whether he signed one or two resolutions. Castleberry testified that she signed only one resolution in favor of Genie and that she did so because Mann told her the shares in his favor were to be issued in exchange for shares he already owned.[3] Lathrop, Johnston, and Vivian Liu, the only representative of NexMed to testify, all testified that whether the shares were registered to Genie or Somerset made no difference because the shares were issued for the benefit of Mann, and that at the relevant time, Mann controlled both of those companies. The shares were subsequently issued to Somerset.[4]

¶7 On July 29, 1994, Lathrop, who was then president of BioElectric, terminated Mann's relationship with BioElectric. Prior to July 29, 1994, Mann performed a number of services for the Company including Mann's negotiation of the acquisition of the Herpes Device for Target and his retention of legal services for the preparation of documents necessary for the Purchase Agreement to be presented to the shareholders.

¶8 In October of 1995, the outstanding shares of BioElectric, whose name had been changed to NexMed, were reverse split one share for twenty, reducing the 2.5 million shares held by Somerset to 125,000. NexMed continues to retain the patent for the Herpes Device and, as of the time of trial, NexMed had plans to market the Device.

¶9 On April 6, 2000—six years after the Somerset shares were issued—NexMed's board of directors adopted a consent resolution, cancelling and rescinding the 125,000 shares registered to Somerset. NexMed subsequently brought this case seeking judgment that the cancellation of the shares was lawful. After a bench trial, the court found in favor of Mann on all counts. NexMed now appeals.

---

3. The trial court determined that Castleberry's claim lacked credibility, and as a result, rejected her testimony.

4. As a result of these April 11, 1994 stock transfers, Mann no longer had control over BioElec-

tric. Lathrop and Johnston owned the largest outstanding block of BioElectric stock, and Lathrop, Johnston, and Castleberry constituted the board of directors of BioElectric.

ISSUES AND STANDARDS OF REVIEW

¶ 10 NexMed argues that the trial court erred in finding an agreement (the Disputed Agreement) for the issuance of 2.5 million shares to Mann (the Disputed Shares), and that the trial court's findings of fact supporting the Disputed Agreement are incomplete, insufficient, and inconsistent. "Whether a contract exists between parties is a question of law; therefore, we review the trial court's conclusion of law under a correction of error standard." *Herm Hughes & Sons, Inc. v. Quintek,* 834 P.2d 582, 583 (Utah Ct.App.1992). Moreover, we review the trial court's findings of fact for clear error. *See Parduhn v. Bennett,* 2005 UT 22,¶ 24, 112 P.3d 495.

¶ 11 NexMed also argues that the trial court erred because the Purchase Agreement bars the trial court's finding of a binding Disputed Agreement. We review a trial court's interpretation of a contract for correctness. *See WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88,¶¶ 19, 22, 54 P.3d 1139.

¶ 12 Additionally, NexMed argues the trial court erred in not applying Nevada Revised Statutes sections 78.211 and 78.315 to allow cancellation of the Disputed Shares. We review the lower court's interpretation of statutes for correctness. *See State v. Pixton,* 2004 UT App 275,¶ 7, 98 P.3d 433.

¶ 13 NexMed next argues the trial court erred by finding there was adequate consideration for the Disputed Agreement. We review whether the requisite elements of a contract exist as a matter of law, for correctness. *See Herm Hughes & Sons,* 834 P.2d at 583.

¶ 14 Finally, NexMed argues the trial court made evidentiary errors because it found the Business Consultant Agreement irrelevant, did not admit a fraud indictment against Mann, and refused to consider Cast-

leberry's testimony. We give great discretion to the trial court's evidentiary rulings and will not overturn the trial court unless it abuses its discretion. *See Gorostieta v. Parkinson,* 2000 UT 99,¶ 14, 17 P.3d 1110.[5]

ANALYSIS [6]

I. The Purchase Agreement

¶ 15 NexMed argues that the Purchase Agreement bars the Disputed stock transfer Agreement on various grounds and that the trial court should have excluded contributions made by Mann that were viewed as consideration for the Disputed Agreement. We disagree and determine that NexMed, as the successor of Target, cannot claim its own breach of the Purchase Agreement as grounds to avoid the Disputed Agreement.

¶ 16 NexMed argues that the Disputed Agreement caused Target to breach provisions in the Purchase Agreement, rendering the Disputed Agreement unenforceable. Specifically, NexMed argues that as a result of the Disputed Agreement Target breached its warranty that there were no liens or estate encumbrances upon the Herpes Device, that it had no outstanding options or warrants, and that it was not a party to any employment contract with any officer, director, or stockholder. NexMed also argues that the Disputed Agreement caused Target to breach the Purchase Agreement's integration clause. We agree with the trial court that any provisions which Target allegedly breached in the Purchase Agreement do not bar the Disputed Agreement because NexMed cannot now claim its own breach as grounds to avoid its separate agreement with Mann.

¶ 17 NexMed contends that the Purchase Agreement's "no finder's fee" provision barred the trial court from determining that Mann's negotiation of the Herpes Device pat-

---

5. NexMed also claims on appeal that the trial court erred by failing to apportion the number of Disputed Shares if the consideration for the shares was future consideration and relying on the delay between the issuance and rescission of the Disputed Shares.

6. NexMed first argues that the trial court's findings are incomplete and insufficient. We have examined the trial court's findings, and when read in context and as supported by the trial court's memorandum decision, we determine that the findings are adequate. *See State v. Mirquet,* 844 P.2d 995, 1001 (Utah Ct.App.1992).

ent was consideration for the Disputed Shares, thus rendering the Disputed Agreement unenforceable for lack of consideration. We do not consider Mann's actions as consistent with those usually labeled as services for a "finder's fee," but even if they were, Mann performed other valuable services which support the trial court's determination of consideration. For example, Mann retained legal services for the preparation of documents necessary for the Purchase Agreement to be presented to the shareholders, and Lathrop testified that Mann's contribution to the Company was significant—probably more significant than the scientists, developers, and officers and directors of the Company. Moreover, BioElectric's board of directors thought that Mann earned and paid fair value for the shares. In light of these facts, we determine that the Purchase Agreement's "no finder's fee" provision did not bar the trial court from finding consideration for the Disputed Agreement.

## II. The Nevada Statutes

¶ 18 NexMed contends that Nevada Revised Statutes sections 78.211 and 78.315 act as a bar to the Disputed Agreement. *See* Nev.Rev.Stat. §§ 78.211, .315 (1994).[7] NexMed argues that the trial court erred in determining that section 78.211, which requires the board of directors to "determine that the consideration received or to be received for the shares to be issued is adequate," *id.* § 78.211(2), was satisfied by the board of directors in issuing the Disputed Shares. Additionally, NexMed contends that the trial court erred by determining that section 78.315, which allows directors to take action without a directors' meeting if "written consent thereto is signed by all the members of the board," *id.* § 78.315(2), was satisfied. We disagree with NexMed and determine that the trial court did not err in

its interpretation of the relevant Nevada statutes.

¶ 19 The trial court, in its memorandum decision, determined that section 78.211(2) did not bar the Disputed Agreement because section 78.211(2) "does not provide a specific remedy when a Board of Directors fails to make a determination of the value of the consideration received." NexMed contends that section 78.211(4) provides a remedy; however, subsection 4 deals with a different situation than the one before us. *See id.* § 78.211(4) (providing a remedy when a corporation places shares to be issued for future consideration into escrow pending receipt of consideration). Thus, we agree with the trial court that pursuant to section 78.211(2), the rescission of shares "is not the appropriate remedy under the facts of this case," and that section 78.211(2) does not bar the determination of a binding Disputed Agreement.[8]

¶ 20 Moreover, NexMed argues that section 78.315 bars the Disputed Agreement because the Amended Resolution, designating Somerset as the recipient of Mann's 2.5 million shares, was not signed by all the members of the board of directors. *See id.* § 78.315(2). The trial court found that the board authorized the issuance of the shares to Somerset. That finding is supported by Lathrop's testimony that he believed all three parties signed the Amended Resolution, and by Johnston's testimony that he could not recall whether he signed the Amended Resolution, but that the difference between Somerset and Genie made no difference. In light of this evidence, we agree with the trial court that section 78.315(2) does not bar the trial court's finding that the Disputed Agreement was binding.

## III. Adequate Consideration

¶ 21 NexMed contends that Mann, as a fiduciary of the Company, failed to meet his

7. The 1994 version of the Nevada Revised Statutes was in effect when the Resolution was adopted. Section 78.211 was amended in 2001. *See* Nev.Rev.Stat. §§ 78.211 (1994).

8. We also agree with the trial court that "while [section 78.211(2)] imposes a duty upon officers and directors to make a determination of consideration in the issuance of shares, [section 78.211] does not authorize that same corporation to cancel shares it has issued, based on its own dereliction of duty in failing to determine adequate consideration at the time of issuance." Moreover, we find persuasive the trial court's finding of fact that while the Resolution did not make any reference to the nature or value of the consideration for the shares that were to be issued, other consent resolutions authorizing the issuance of shares also failed to provide consideration or value to be paid for the shares issued.

burden of proof to establish adequate consideration for the Disputed Shares and to prove the inherent fairness of the transaction. We disagree and determine that the trial court did not err in finding that Mann was not a fiduciary and that Mann provided adequate consideration.

¶ 22 NexMed first argues that Mann had a controlling interest over the Company, rendering him a de facto officer and requiring him to assume a fiduciary obligation to the Company. NexMed argues that sometime between December of 1993 and January of 1994 Mann had a controlling interest in the Company because he owned a significant portion of Company stock and dictated many of the Company's operations. As a result, NexMed contends Mann had a fiduciary obligation to the Company. However, we agree with the trial court that the relevant date to consider whether Mann had a fiduciary obligation was April 11, 1994, the date the Resolution was approved. On April 11, 1994, Mann could not have had a fiduciary obligation because the trial court found that Mann no longer had control over the Company—Lathrop and Johnston owned the largest outstanding block of company stock and Lathrop, Johnston, and Castleberry constituted the board of directors. Accordingly, we determine that Mann did not have a fiduciary obligation to the Company.[9]

¶ 23 Finally, NexMed argues that Mann failed to establish by clear and convincing evidence the inherent fairness and adequacy of consideration for the transaction. NexMed contends that the trial court erred in not applying an objective standard to determine the inherent fairness of the Disputed Shares and in not addressing the interests of minority shareholders.[10] However, NexMed does not cite any Nevada law to support its contention that an objective standard should

be used, and as a result, NexMed fails to convince this court that we should apply an objective standard. NexMed also contends that the trial court erred in determining the transaction was fair and supported by adequate consideration. We also reject this claim and determine that the trial court correctly found that any value of the Company's stock was due primarily to the efforts of Mann, who negotiated the acquisition of the Herpes Device. Therefore, the trial court did not err in finding that Mann provided adequate consideration and that the transaction was fair.

## IV. Evidentiary Errors

¶ 24 NexMed argues that the trial court erred in: 1) finding the Business Consultant Agreement irrelevant; 2) not admitting the fraud indictment against Mann; and 3) refusing to consider the testimony of Castleberry. We determine that the trial court did not abuse its discretion in its evidentiary rulings.

¶ 25 First, the trial court did not abuse its discretion in finding the Business Consultant Agreement irrelevant[11] because although it provides a useful context for the other agreements at issue in this case, it is not relevant to the ultimate issue in this case. We agree with the trial court that "the existence of the [Business Consultant] Agreement would not be fatal to Mr. Mann's claim that the shares were properly issued" because the Business Consultant Agreement does not provide for the issuance of any shares to Mann or his companies, Genie was never paid anything pursuant to the Business Consultant Agreement, and consequently, the Business Consultant Agreement was irrelevant to the ultimate issue of whether the Disputed Shares were properly rescinded.

¶ 26 We also agree with the trial court's exclusion of the fraud indictment

9. We reject NexMed's claim that Mann was a de facto officer. While Mann played a significant role in the Company prior to April 11, 1994, he had no such authority to act as an officer, and we determine that he did not act as one after April 11, 1994.

10. NexMed cites to an Ohio case and to the Utah Code as supporting the proposition that this court should apply an objective standard to de-

termine the inherent fairness of the Disputed Shares. However, because the Company is a Nevada corporation, Nevada law applies.

11. See Utah R. Evid. 401 (stating that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

against Mann because it was not properly preserved in the pretrial order and it was barred by Utah Rule of Evidence 404(b) which states that "[e]vidence of other crimes ... [are] not admissible to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b). Moreover, even if Mann's indictment was offered for a proper, non-character purpose, such evidence is irrelevant and barred by rule 401 of the Utah Rules of Evidence because evidence of Mann's indictment would not make whether NexMed properly rescinded the Disputed Shares more or less probable than it would without the evidence. *See* Utah R. Evid. 401.

¶ 27 Finally, the trial court did not abuse its discretion in disregarding Castleberry's testimony that she signed the Resolution based on Mann's misrepresentation that the Disputed Shares issued to Genie were shares already owned by Mann, that she never signed the Amended Resolution, and that she saw Somerset's name on documents but did not know Somerset was controlled by Mann. Because the trial court is in a better position to judge the credibility of witnesses, *see State v. Hardy*, 2002 UT App 244, ¶ 11, 54 P.3d 645, we determine that the trial court did not abuse its discretion in disregarding Castleberry's testimony because it lacked credibility.[12]

## CONCLUSION

¶ 28 We conclude that the trial court did not err in determining that NexMed did not have the right to cancel and rescind the issuance of the Disputed Shares to Somerset. Accordingly, we affirm.

¶ 29 I CONCUR: CAROLYN B. McHUGH, Judge.

¶ 30 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

12. Moreover, we reject NexMed's claim that if the Disputed Shares were issued for future consideration, the shares must be apportioned and we determine that the trial court did not err in considering NexMed's delay in bringing suit as a factor against NexMed.