2014 UT App 132

**Sachin PATOLE, Petitioner and Appellant,**

v.

**Mark MARKSBERRY, Respondent and Appellee.**

No. 20130208–CA.

Court of Appeals of Utah.

June 12, 2014.

Julie C. Winkler, for Appellant.

Mark Marksberry, Appellee Pro Se.

Judge GREGORY K. ORME authored this Memorandum Decision, in which Judges J. FREDERIC VOROS JR. and JOHN A. PEARCE concurred.

Memorandum Decision

ORME, Judge:

¶ 1 Sachin Patole appeals the trial court's denial of his request for a protective order against his father-in-law, Mark Marksberry. Because we determine that the court plainly erred by finding insufficient evidence of abuse and by incorrectly narrowing the definition of cohabitant found in the Cohabitant Abuse Act (the CAA), we reverse and remand for further proceedings.

¶ 2 Patole sought a restraining order against Marksberry based on several alleged incidents of abuse. Marksberry was not represented by counsel at the evidentiary hearing on the petition, and he is not represented by counsel on appeal. He did not file a brief, and it appears from the record that he did not strenuously object to the protective order that Patole seeks. When the trial court asked Marksberry if he was resisting the protective order, he responded: "I don't care.... I resist the lies, but I did do one of these things, so I'll sign a protective order. I don't care." In the end, Marksberry decided to stay at the hearing "to tell the truth." He did not testify, but Patole and Marksberry's daughter—against whom Patole was also seeking a protective order and who was represented by counsel—both testified that on at least one occasion Marksberry hit Patole in the face.[1] At the conclusion of the hearing, the trial court denied Patole's petition for a protective order against Marksberry, concluding that they were not cohabitants within the meaning of the CAA and that even if they were, there was insufficient evidence of abuse or domestic violence.

¶ 3 Patole did not object to the trial court's findings at the time, and accordingly asks us to review the trial court's decision for plain error. To establish plain error, a petitioner must show that

(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant....

*State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

¶ 4 Patole first asserts that the trial court erred in deciding that he was not a cohabitant with Marksberry for the purposes of the CAA. After an evidentiary hearing, the trial court ruled from the bench:

With respect to Mr. Marksberry, ... there's [not] sufficient evidence that they're co-habitants. The question of whether people who are related can be cohabitants or not is kind of a grey area under the statute. Of course you can find a lot of people that are technically related.... I don't think the statute means people that broadly, and I think it has to be that the relationship has somehow caused you to spend a considerable amount of time together, and there's really no evidence of that in this case.

¶ 5 The trial court's attempt to limit the definition of cohabitant is perhaps understandable. Normally, the word "cohabitant" would suggest two people who are living together or at least who lived with each other at some point in time. But the CAA defines cohabitant in a much different way. *See* Utah Code Ann. § 78B-7-102 (LexisNexis 2012); *Myers v. Myers*, 2010 UT App 74, ¶ 14 n. 4, 231 P.3d 815 ("One term may have different meanings in different statutory contexts. Thus, as used in the CAA, the term 'cohabitant' includes many categories of persons who do not live together as husband and wife."), *aff'd*, 2011 UT 65, 266 P.3d 806. The CAA specifically defines "cohabitant" as a person who

(a) is or was a spouse of the other party;

(b) is or was living as if a spouse of the other party;

(c) is related by blood or marriage to the other party;

1. Patole's appeal from the denial of the protective order he sought against Marksberry's daugh-

ter is the subject of a separate opinion. *See Patole v. Marksberry*, 2014 UT App 131.

(d) has one or more children in common with the other party;

(e) is the biological parent of the other party's unborn child; or

(f) resides or has resided in the same residence as the other party.

Utah Code Ann. § 78B–7–102(2).[2] While we recognize that the statutory definition expands the word beyond the realm of its normal usage, we do not agree with the trial court that this presents a gray area in which additional limitations may be judicially inserted. Instead, we "assume that the words and phrases used [in the CAA] were chosen carefully and advisedly." *Hill v. Hill*, 968 P.2d 866, 868 (Utah Ct.App.1998) (citation and internal quotation marks omitted).

¶ 6 Based on the CAA's definition, Patole and Marksberry are cohabitants because they are related by marriage. *See* Utah Code Ann. § 78B–7–102(2)(c). Next to a spouse—already explicitly included in subsection (2)(a)—a father-in-law is one of the closest relations possible through marriage.[3] Therefore, even reading the statute narrowly, the definition of cohabitant would have to include a father-in-law or else the phrase "related by . . . marriage" in subsection (2)(c) would be meaningless. When interpreting the text of a statute, we "avoid interpretations that will render portions of [it] superfluous or inoperative." *Hall v. Department of Corrections*, 2001 UT 34, ¶ 15, 24 P.3d 958. As a result, we readily conclude that Patole and Marksberry are cohabitants for the purposes of the CAA, even though they do not satisfy subsection (2)(f), which sets forth the classic definition of "cohabitant."

¶ 7 The trial court found no evidence that Patole and Marksberry spent "a considerable amount of time together," but this observation, even if correct, has no effect on whether Patole and Marksberry are cohabitants under the CAA, except indirectly under subsection (2)(f). We therefore conclude that the trial court erred in determining otherwise.

¶ 8 This error should have been "obvious to the trial court." *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). When there is no settled appellate law to guide a trial court and the relevant statute is not controlling in plain terms, an error will not be considered obvious. *See State v. Low*, 2008 UT 58, ¶ 41, 192 P.3d 867; *State v. Ross*, 951 P.2d 236, 239 (Utah Ct.App.1997). In this case, however, the law is settled that the definition of cohabitant contained in the CAA is intentionally broad and is to be construed in accordance with the words used in the statute. *See Myers*, 2010 UT App 74, ¶ 14 n. 4, 231 P.3d 815 (recognizing that the CAA has a broader definition of cohabitant than other statutes); *Corwell v. Corwell*, 2008 UT App 49, ¶ 9, 179 P.3d 821 (taking notice of the Legislature's intent to create a broadly applicable statute with the CAA). This error prejudiced Patole because the trial court's erroneous conclusion that he and Marksberry were not cohabitants necessarily precluded Patole's petition for a protective order. *See* Utah Code Ann. § 78B–7–103 (providing that only a cohabitant may seek a protective order). Accordingly, it was plain error for the trial court to conclude that Patole and Marksberry were not cohabitants as defined in the CAA.

¶ 9 Patole also argues that the trial court erred in determining that there was insufficient evidence of abuse or domestic violence. Marksberry's striking of Patole readily falls under the definition of abuse. *See id.* § 78B–7–102(1). Under the CAA, a petitioner must prove three elements to establish abuse: (1) the petitioner was a cohabitant at the time of the abusive act, (2) the act was intentional, and (3) the act caused the petitioner physical harm. *See id.; Martin v. Colonna*, 2009 UT App 227, ¶ 10, 217 P.3d 1147 (concluding that abuse committed dur-

---

2. The 2013 amendment of the CAA added "or had" to subsection (2)(d), so that provision now reads, "has or had one or more children in common with the other party." *See* Utah Code Ann. § 78B–7–102(2)(d) (LexisNexis Supp.2013).

3. Based on standard consanguinity and affinity charts, a father-in-law is a first-degree relation by affinity, i.e., the closest possible relationship by marriage. *See, e.g., Consanguinity/Affinity Chart*, State of Nevada Commission on Ethics, http://ethics.nv.gov/FORMS/Consanguinity-affinity%20chart%20043008.pdf (last visited June 9, 2014).

ing a time when the petitioner was not a cohabitant does not fall under the CAA).

¶ 10 We have already concluded that Patole and Marksberry are cohabitants as defined in the statute. *See supra* ¶ 6. And it is undisputed that on at least one occasion Marksberry intentionally hit Patole in the face, which certainly amounts to physical harm under the CAA. *Cf. Bailey v. Bayles*, 2002 UT 58, ¶ 24, 52 P.3d 1158 (holding that slapping "constitute[s] physical harm under the terms of the statute"). As a result, the trial court erred in finding insufficient evidence of abuse. With clear appellate guidance on what constitutes abuse, this error should have been obvious to the trial court. Finally, this error resulted in prejudice to Patole by foreclosing his ability to seek a protective order against his father-in-law and, absent this error, Patole would likely have been granted the protective order.

¶ 11 Because we conclude that the court plainly erred in determining that Patole was not a cohabitant under the CAA and in determining that there was insufficient evidence of abuse as defined by the CAA, we reverse and remand for further proceedings consistent with this decision.