2014 UT App 131

**Sachin PATOLE, Petitioner and Appellant,**

v.

**Tess MARKSBERRY, Respondent and Appellee.**

No. 20120934–CA.

Court of Appeals of Utah.

June 12, 2014.

**54**

Michelle E. Lesué, for Appellant.

Autumn R. Fitzgerald, for Appellee.

Judge GREGORY K. ORME authored this Opinion, in which Judges J. FREDERIC VOROS JR. and JOHN A. PEARCE concurred.

Opinion

ORME, Judge:

¶ 1 Sachin Patole appeals the trial court's denial of his request for a protective order against his wife, Tess Marksberry. Because we determine that the trial court erred in interpreting the Cohabitant Abuse Act (the CAA), we reverse and remand for further proceedings.

## BACKGROUND [1]

¶ 2 After having been married for about four months, Marksberry and Patole were in their garden at two o'clock in the morning when, for unexplained reasons, Patole began throwing bricks, chairs, planters, and tables. Later, during an evidentiary hearing held in connection with Patole's petition for a protective order, Marksberry explained that she found Patole's tantrum "completely ridiculous and uncalled for," so she grabbed Patole by the neck, flipped him over her hip, and held him down for a couple of minutes. When she released Patole, he got up and threw a table over. After this incident, no one called the police, and the couple continued to live together for another six months. They are currently separated and seeking a divorce.

¶ 3 Patole, who is not a U.S. citizen, also claims that Marksberry threatened several times to report him to the police for having an expired visa and that she threatened him with an assault by her father, who had beaten Patole on at least one prior occasion.[2] According to Patole, these threats dissuaded him from calling the police or seeking a protective order until nearly a year after the incident in the garden.

¶ 4 When Patole did petition for a protective order against Marksberry, the trial court denied it. Patole then requested a hearing. Following the hearing, the trial court concluded:

---

1. Because the trial court's findings of fact were made orally from the bench and were relatively sparse, "our recitation of the facts also includes findings implicitly made by the trial court and matters that are undisputed in the record." *See State v. Legg*, 2014 UT App 80, ¶ 2, 324 P.3d 656.

2. Patole also sought a protective order against his father-in-law, which the trial court also denied. Patole appealed that denial as well, and we address that appeal in a separate decision. *See Patole v. Marksberry*, 2014 UT App 132, 329 P.3d 50.

I'm convinced that this is not about Mr. Patole being in fear of his life or his safety, and so with respect to the Tess Marksberry petition, I find that there's not sufficient evidence of danger—immediate danger to the petitioner's safety or domestic violence or abuse. . . .

The bigger issue here is I don't think Mr. Patole is really afraid of these people.

The trial court again denied Patole's request for a protective order against Marksberry. Patole appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 5 Patole argues that the trial court erred in its interpretation of the legal standard found in the CAA. "The proper interpretation and application of a statute is a question of law," and we afford no deference to the trial court in reviewing its interpretation. *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998).

## ANALYSIS

■ ¶ 6 On appeal, Patole contends that the trial court did not properly interpret the CAA. But at the hearing, Patole "failed to specifically raise [his] objections and to introduce supporting evidence or relevant legal authority." *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801. Because of this omission, we conclude that Patole did not raise his principal appellate issue in such a way as to afford the trial court "an opportunity to correct the alleged error," and thus the issue is unpreserved for appeal. *See id.* Patole concedes as much and asks us to review the trial court's interpretation of the CAA, and the resulting denial of his petition, for plain error. To establish plain error, a petitioner must show the following:

> (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant. . . .

*State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). We consider each of these requirements in turn.

## I.  Error

¶ 7 The trial court erred in interpreting the legal standard applicable to this case. The relevant provision of the CAA states:

> Any cohabitant who has been subjected to abuse or domestic violence, or to whom there is a substantial likelihood of abuse or domestic violence, may seek . . . a protective order . . . whether or not that person has left the residence or the premises in an effort to avoid further abuse.

Utah Code Ann. § 78B–7–103(1) (LexisNexis 2012). During its ruling from the bench, the trial court was concerned that Patole was not in "immediate danger" and that he was not in "fear of his life or his safety." Nothing in the statute requires that a petitioner be in immediate danger or in such fear. *See id.*

¶ 8 On appeal, Patole asserts that the trial court misinterpreted the CAA to require both a showing of past abuse or domestic violence *and* a substantial likelihood of abuse or domestic violence in the future. Patole argues that the plain language of the statute requires only that the petitioner (1) was a cohabitant and (2) had suffered past abuse or domestic violence, *or,* in the alternative, could show a substantial likelihood of future abuse or domestic violence. Patole claimed that he and Marksberry were cohabitants and that she had abused him on a prior occasion. That is all the CAA requires to demonstrate eligibility for a protective order, and the trial court's reliance on its determination that there was not "sufficient evidence of danger" is misplaced.

¶ 9 It is possible, as Patole suggests, that the trial court was erroneously relying on our ruling in *Bailey v. Bayles*, 2001 UT App 34, 18 P.3d 1129, *aff'd*, 2002 UT 58, 52 P.3d 1158. There, we articulated a three-part test for protective order eligibility under the CAA: The petitioner must (1) be a cohabitant of the respondent, (2) have suffered physical abuse or domestic violence, and (3) have an imminent fear of physical harm or fear of future abuse. *Id.* ¶ 12. This test was apparently formed by blending the CAA's requirements with language from a prior decision in which we held that the CAA protects a person " 'if past abuse is coupled with a present threat of future abuse.' " *See id.* ¶¶ 11–12 (quoting

*Strollo v. Strollo*, 828 P.2d 532, 534 (Utah Ct.App.1992)).

¶ 10 This test, literally applied, would directly conflict with the plain meaning of section 78B–7–103 of the CAA, which does not require a showing of fear of future abuse if the petitioner has shown past abuse. When the Utah Supreme Court affirmed our decision in *Bailey*, it clarified that,

> according to the statute, in order for [the petitioner] to obtain a protective order, she was required to show that she was a cohabitant and *either* that she had been subjected to abuse or domestic violence, *or* that there was a substantial likelihood of immediate danger of abuse or domestic violence to her.

*Bailey v. Bayles*, 2002 UT 58, ¶ 24, 52 P.3d 1158 (emphasis in original). Since the Utah Supreme Court's clarification in *Bailey*, this court has repeatedly employed the correct statutory test without the errant gloss that emerged in our Bailey decision. *See, e.g.*, *Martin v. Colonna*, 2009 UT App 227, ¶ 7, 217 P.3d 1147 ("The statute provides two alternative grounds upon which [petitioner] may seek a protective order, and states: 'Any cohabitant who has been subjected to abuse or domestic violence, or to whom there is a substantial likelihood of abuse or domestic violence, may seek an ex parte protective order or a protective order in accordance with this chapter.'") (emphasis in original) (quoting Utah Code Ann. § 78B–7–103(1) (2008)); *State v. Hardy*, 2002 UT App 244, ¶ 17, 54 P.3d 645 ("Before a protective order may issue, a court must first conclude that the parties to the protective order are cohabitants, and that a cohabitant has been 'subjected to abuse or domestic violence, or … [that] there is a substantial likelihood of immediate danger of abuse or domestic violence.'") (quoting the predecessor of Utah Code section 78B–7–103).

¶ 11 But despite the clarity of the CAA's language, the definitiveness of the Utah Supreme Court's holding in its *Bailey* decision, and this court's subsequent rulings consistent therewith, the flawed test this court announced in its *Bailey* decision, which added a requirement not in the statute, continues to circulate. For example, the editors of both LexisNexis and Westlaw include the incorrect three-part test in their annotated versions of the Utah Code. *See* Utah Code Ann. § 78B–7–103 notes to decisions (LexisNexis 2012) ("To obtain a protective order under [the CAA], petitioner was required only to demonstrate: (1) she is or was a cohabitant of the respondent …; (2) she had suffered physical abuse or domestic violence …; and (3) she had an imminent fear of physical harm, or 'a present fear of future abuse.'") (quoting *Bailey*, 2001 UT App 34, ¶ 12, 18 P.3d 1129); Utah Code Ann. § 78B–7–103 notes of decisions (Westlaw through 2013 Second Spec. Sess.) ("To obtain protective order, petitioner is required to demonstrate (1) petitioner is or was a cohabitant of the respondent, (2) petitioner had suffered physical abuse or domestic violence, and (3) petitioner had an imminent fear of physical harm or, put another way, a present fear of future abuse.").

¶ 12 We agree with Patole that the unfortunate continued vitality of our erroneous *Bailey* opinion may have led to some confusion. Considering that our role is to ensure legal accuracy and uniformity, *see Richardson v. Rupper*, 2014 UT App 11, ¶ 7, 318 P.3d 1218, we will endeavor, once and for all, to make this path straight. Therefore, we reiterate that the simple test enshrined in plain terms in the statute adopted by the Utah Legislature, as recognized by the Utah Supreme Court in its *Bailey* opinion, is the one, true standard for analyzing petitions for protective orders under the CAA. That is, a petitioner must prove that he or she is (1) a "cohabitant" (2) "who has been subjected to abuse or domestic violence, *or* to whom there is a substantial likelihood of abuse or domestic violence." *See* Utah Code Ann. § 78B–7–103 (LexisNexis 2012) (emphasis added).

¶ 13 It follows, then, that any purported analytic framework for considering the availability of a protective order that is inconsistent with this standard is incorrect under the CAA. This includes the flawed test articulated in our *Bailey* decision and the concept that, in petitions for protective orders under the CAA, past abuse must be "coupled with a present threat of future harm." *Strollo v.*

*Strollo,* 828 P.2d 532, 535 (Utah Ct.App. 1992).

¶ 14 It is undisputed that Patole and Marksberry were cohabitants at the time of the alleged abuse. Patole claims that he was the victim of abuse on a prior occasion at the hands of Marksberry. As a result, the trial court erred when it ruled from the bench at the conclusion of the evidentiary hearing that because Patole was not in fear of Marksberry at present, and had no fear for his safety going forward, he did not meet the threshold requirement for eligibility for a protective order.

## II. Obviousness

■ ¶ 15 We now examine whether this error "should have been obvious to the trial court." *See State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993). When there is no settled appellate law to guide a trial court and the relevant statute is not controlling in plain terms, an error will not be considered obvious or "plain." *See State v. Ross,* 951 P.2d 236, 239 (Utah Ct.App.1997); *State v. Low,* 2008 UT 58, ¶ 41, 192 P.3d 867. In this case, however, the appellate law is settled and the statute is controlling in plain terms. *See supra* ¶ 10. Therefore, if a cohabitant has alleged prior abuse in a petition for a protective order under the CAA, then it would be obviously improper to dismiss that petition based on a lack of a likelihood of future abuse—which is merely an alternative ground for obtaining a protective order, not an additional requirement.

¶ 16 It is true that secondary sources, such as annotations to the Utah Code, have made the law on this subject appear to be unsettled. *See supra* ¶ 11. We also recognize that the standard form for denying a protective order approved by the Board of District Court Judges might also lead to confusion. The standard denial form presents various statements accompanied by check boxes, which the trial court may select to indicate all the options that conform with the trial court's findings. It reads, in part:

The Court ... orders that the Protective Order is denied because:

[1] there is not sufficient evidence that the Petitioner and Respondent are cohabitants.

[2] there is not sufficient evidence of domestic violence or abuse, or of a substantial likelihood of immediate danger to the Petitioner's safety.

Initially it appears to be a faithful representation of the correct statutory test. But the CAA provides that a trial court may *grant* a protective order based on at least one of two alternative grounds: past abuse or domestic violence *or* substantial likelihood of future abuse or domestic violence. The standard denial form, however, is phrased in the negative. As a result, it could be read to mean that a trial court may *deny* a protective order based on the petitioner's failure to demonstrate either one of the two alternatives. Such a reading could allow a trial court to erroneously apply our flawed *Bailey* test with its extra requirement. To avoid confusion, the standard denial form should read, following the second check box: "there is not sufficient evidence of domestic violence or abuse, *and* there is not sufficient evidence of a substantial likelihood of immediate danger to the Petitioner's safety." Indeed, when applying the statutory test, a trial court must dispose of both alternative grounds before it can properly deny a protective order request under the CAA.

¶ 17 But in determining whether the trial court's error should have been obvious, we do not consider secondary sources or standardized forms. Instead, we consider the clarity of any applicable statute and whether there is "settled appellate law to guide the trial court." *Ross,* 951 P.2d at 239. In light of the plain meaning of the CAA and the well-settled appellate guidance from both this court and the Utah Supreme Court, we conclude not only that the trial court erred but also that this error should have been obvious.

## III. Prejudice

■ ¶ 18 Finally, we determine whether, "absent the error, there is a reasonable likelihood of a more favorable outcome" for Patole. *See State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993). While the trial court erred in considering Patole's lack of fear of future

abuse, this error only prejudices Patole if he would be able to prove that he had suffered abuse or domestic violence at the hands of Marksberry on a prior occasion *or* that there was a substantial likelihood of future abuse or domestic violence from Marksberry. We conclude that, under the CAA, a reasonable likelihood exists that Patole will be able to prove at least one incident of past abuse.

¶ 19 The CAA defines abuse as "intentionally or knowingly causing or attempting to cause a cohabitant physical harm." Utah Code Ann. § 78B–7–102(1) (LexisNexis 2012). Marksberry admitted that she grabbed Patole around the neck, flipped him over her hip, and held him down for a couple of minutes. Marksberry does not assert that the act was involuntary or in any way unintentional. Instead, Marksberry contends that her actions were justified by Patole's tantrum in the garden. While this justification could potentially render her actions something less than domestic violence, Marksberry's intentional act still likely falls within the CAA's broad definition of abuse.[3] Marksberry does not contend that the CAA's definition of abuse is overly broad, and considering the state's "inarguably significant interest in protecting" cohabitants from abuse, we see no reason to read the statute narrowly. *See State v. Hardy*, 2002 UT App 244, ¶ 17, 54 P.3d 645. Because Patole and Marksberry were cohabitants under the CAA and because Marksberry acted intentionally, the only remaining question is whether Marksberry caused Patole "physical harm." *See* Utah Code Ann. § 78B–7–102(1). Be-

cause the Utah Supreme Court has determined that slapping a cohabitant "constitute[s] physical harm under the terms of the statute," *Bailey v. Bayles*, 2002 UT 58, ¶ 24, 52 P.3d 1158, being grabbed by the neck, flipped over, and held down also constitutes physical harm under the CAA. Patole was a cohabitant, Marksberry acted intentionally, and her actions caused Patole physical harm at least on par with a slap. Considering all this, we conclude that absent the trial court's legal error, a reasonable likelihood exists that Patole's petition for a protective order would have been granted. *See State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993).

## CONCLUSION

¶ 20 The trial court erred in premising its decision on the lack of immediate danger to Patole and Patole's lack of fear, given that his petition for a protective order under the CAA was premised on allegations of prior abuse. Based on the plain meaning of the statute and well-settled appellate law, this error should have been obvious to the trial court. This error prejudiced Patole. Accordingly, we reverse and remand to the trial court for such further proceedings as may now be in order.

---

3. The CAA defines domestic violence as "any criminal offense involving violence or physical harm ... when committed by one cohabitant against another," but it also includes specific criminal offenses that do not necessarily include physical harm, such as harassment, electronic communication harassment, stalking, criminal trespass, and violation of a protective order. *See* Utah Code Ann. § 77–36–1(4) (LexisNexis 2012). Abuse, however, is not limited to actions that would constitute a criminal offense. *See id.* Marksberry claims that her actions were justified, which, if true, would render them less than criminal and therefore something other than domestic violence. But because abuse under the CAA does not require that a criminal offense has been committed, justifications that apply to criminal offenses do not necessarily apply to claims of abuse under the CAA. *See id.*